[S. F. No. 2947.   Department Two.—January 4, 1905.]

# A. G. ROPES, Appellant, v. JOHN ROSENFELD'S SONS, Respondent.

VENDOR AND PURCHASER—BROKER'S COMMISSION—EXPIRATION OF CON-
TRACT.—A real-estate broker having a right to a commission on a
sale of real estate for finding a purchaser must in order to be
entitled to the commission perform the duty of finding the pur-
chaser within the time limited in the contract or an extension thereof
by the owner.  The fact that he made efforts to sell the property
within the time limited, and first called it to the attention of the
party who made the purchase, will not entitle him to a commission
if he failed to procure the purchaser within the time limited, if
the delay was not caused by the negligence, fault, or fraud of the
owner.

ID.—CONSTRUCTION OF CONTRACT—TIME LIMIT.—Where the owner on
Sunday gave a broker the right to sell the property on certain terms,
"subject to prompt reply," which meant that the broker had
all of the following day to bring a purchaser, the owner could not
withdraw the offer before the expiration of the following day;
but the procuring of a purchaser on Tuesday was beyond the time
limit, and where the owner sold directly to the same purchaser
on that day commissions were not recoverable by the broker.

ID.—SALE NOT RATIFIED—COMPROMISE OF COMMISSIONS—TIME LIMIT
NOT WAIVED.—The fact that the purchase money was paid on
Tuesday through the broker, and, there being a dispute as to the
right to a commission, the money was receipted for by the owner,
less one half of the commission, by way of compromise, while the
right to the other half was left in dispute, does not show a ratifica-
tion of the sale or a waiver of the time limit as respects the
residue of the commission.

ID.—ACTION FOR COMMISSION—PLEADING—COUNT FOR WORK AND LABOR
—OMISSION IN FINDING—EVIDENCE.—Where in the action for the
agreed commission there was a second count in the complaint for
work and labor, and all of the evidence was directed to the alleged
contract and the sale under it, the failure of the court to find on
the second count will not justify a reversal.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion.

Andros & Frank, and Nathan H. Frank, for Appellant.

Goodfellow & Eells, for Respondent.

CHIPMAN, C.—Action for commission alleged to be due plaintiff from defendant corporation on account of the sale by plaintiff of defendant's steamer, the Peter Jebsen.

It is alleged in the complaint that plaintiff was at all times mentioned therein, and still is, doing business in the city of New York under the firm name of I. F. Chapman & Co., and that "R. J. Chapman of San Francisco, doing business under the firm name and style of J. F. Chapman & Co., was the agent of said plaintiff." It is alleged that on the date above named R. J. Chapman as such agent entered into an agreement with defendant "whereby defendant promised and agreed to pay to said plaintiff a brokerage of five per cent upon $215,000, provided the said plaintiff would secure the United States navy department as a purchaser of said sum of $215,000 of the Norwegian steamer Peter Jebsen"; that plaintiff secured the said United States navy department as a purchaser of said steamer at said figure, and defendant received the purchase price on May 26, 1898; that defendant thereafter paid plaintiff one half of said commission, but refused to pay the balance thereof. A second cause of action is for this sum, for work and labor performed in the same matter.

Defendant denies that there was any agreement between plaintiff and defendant other than as follows: That on May 22, 1898, defendant gave said R. J. Chapman a verbal offer to sell said steamer for the amount stated above, less five per cent, "subject to prompt reply" (which the court found was understood by the parties to mean that the "offer would expire and cease to be binding unless the steamer was sold and defendant notified thereof on the following day"). The answer avers that on May 23d "no prompt or other reply had been made to said offer, and on the afternoon of said 23d day of May, the said offer was withdrawn, and the said R. J. Chapman was notified thereof and thereto the said Chapman assented"; denies that plaintiff secured a purchaser for said steamer; denies the payment to plaintiff of any commission or that any commission is still due plaintiff, and alleges that

the defendant sold the steamer to the United States government for $215,000, "and that on the 26th day of May, 1898, the plaintiff herein paid to this defendant the sum of $209,625."

The court found as facts that on May 22, 1898, defendant gave R. J. Chapman as agent of plaintiff "a verbal offer to sell the steamer in plaintiff's complaint referred to for the sum of $215,000 U. S. gold coin, less five per cent thereof 'subject to prompt reply'" (the meaning of prompt reply already stated). That on May 23, 1898, "no prompt or other reply was or had been made to said offer, nor was said steamer on said day sold nor had any purchaser therefor been found; that on the afternoon of May 23, 1898, the said offer of defendant was withdrawn and the said R. J. Chapman as such agent was notified thereof and thereto assented." "That save as hereinbefore set forth there never was any agreement between the plaintiff or his said agent and the defendant respecting the said steamer." That after the said twenty-third day of May, 1898, defendant sold the steamer to the United States government for $215,000 and that the sale was not made through plaintiff's agency, nor did plaintiff secure the United States navy department as a purchaser of said steamer and that there is not due plaintiff as commission or otherwise any sum whatever. Defendant had judgment, from which and from the order denying his motion for a new trial plaintiff appeals.

The facts disclosed by the record are made up of verbal personal communications, messages by telephone, telegrams, and letters of sundry persons, and testimony at the trial, and are somewhat voluminous. We will endeavor without unnecessary prolixity to state the established facts which appear to us to bear on the points raised in the briefs.

Captain Bradford, chief of the bureau of equipment of the navy department at Washington, on Saturday, May 21, 1898, telegraphed plaintiff in New York: "Am in the market for collier in the Pacific. Have you anything to offer?" Plaintiff thereupon replied by telegraph: "Will name you collier Monday," and also telegraphed to R. J. Chapman, plaintiff's agent at San Francisco: "Make us firm offer immediately if you desire the business. Colliers sale or charter give full description." Chapman called on defendant that afternoon to learn
CXLV. Cal.—43

if it had a collier for sale, and was told it had. The parties agreed to meet next day, Sunday, May 22d, at ten o'clock A. M., and they did so meet. There were present Chapman, Henry Rosenfeld, secretary of defendant corporation, and John and Louis Rosenfeld, the former president of the corporation. The steamer Peter Jebsen was then and there offered to Chapman for $215,000, less five per cent, or $205,000 net, "subject to prompt reply." Chapman did not inform defendant nor did defendant know for whom he was acting or to whom he proposed to sell the steamer, but knew in a general way that Chapman was agent for plaintiff here and that plaintiff was in the brokerage business. Chapman telegraphed plaintiff on Sunday at eleven o'clock A. M.: "Offer your firm Norwegian steamer Peter Jebsen"(describing her capacity, etc., briefly, and terms of sale same as above). The time limit, however, was not stated in the telegram. On Monday, about five o'clock P. M., Henry Rosenfeld called up Chapman on the telephone and inquired if they had any reply, who answered, "No, I have nothing yet," and Rosenfeld replied: "Our offer is withdrawn," to which, as testified by Rosenfeld, Chapman answered, "I am sorry," or "I cannot help it. . . . He made one of those remarks." Thereafter, on Monday, May 23d, defendant offered the steamer to Lieutenant Brooks, aide-de-camp of Admiral Kirkland, commandant of the Mare Island navy-yard, "subject to prompt reply," for $215,000. On the next day, Tuesday, May 24th, about two o'clock P. M., a contract of sale and purchase was entered into in writing between defendant and pay inspector of the U. S. Navy Griffing, who was acting in the matter under the direct orders and by authority of Admiral Kirkland, and the steamer was delivered at the navy-yard by defendant that evening. Defendant had no communication with Chapman on Monday except as shown above, nor did Chapman, so far as appears, inform plaintiff on Monday that defendant had withdrawn its offer. While these events were transpiring at San Francisco plaintiff at New York was dealing directly with the navy department through Captain Bradford, and on Monday, May 23d, telegraphed him a short description of the Peter Jebsen, stating: "Will write full particulars." Receiving no reply to this telegram, one Murray, manager of plaintiff, at New York, went to Washington Monday night, arriving at

Washington Tuesday morning, May 24th. On Tuesday plaintiff was telegraphing Chapman for further particulars about the steamer, and Chapman had also received another telegram in the morning: "Will report Jebsen soon." At 10:30 A. M. Tuesday Chapman telegraphed, and so far as appears for the first time, that "The owners of the Jebsen have given refusal until to-night. Commandant navy-yard here failing, this vessel is still open for business," giving further description of the vessel. Murray received at Washington from New York the following, dated May 24th: "Chapman wires Peter Jebsen' telegraph immediately or we shall lose the business. Other parties are making her offer." Some time during that day, Tuesday, May 24th, Murray offered in writing the steamer to Bradford for $215,000, and Bradford accepted the offer in writing, and at 6:46 P. M. Tuesday a telegram was received at San Francisco from plaintiff and was delivered to Chapman Wednesday morning, May 25th, stating that plaintiff had sold the steamer. Plaintiff had made no offer to sell the steamer prior to Tuesday. During that day some telegrams were exchanged between Bradford and Kirkland, the latter informing the former that the pay-office at San Francisco had purchased the steamer by his (Kirkland's) order, and the former informing the latter that he had purchased her from New York parties on that day, and informing the latter that he (Bradford) intended only that Kirkland should purchase the cargo. It does not appear in what sequence these messages were sent and received. Bradford, however, testified that the bureau gave Kirkland no authority to purchase the steamer, and he expressed the opinion that Kirkland had no such authority. What authority, if any, Kirkland had does not appear; it only appears that he exercised it. There is in the record a letter of the navy department, of April 8, 1898, authorizing the chief of the bureau of equipment to procure information about colliers and after inspection to "recommend to the secretary the purchase of those you deem advisable"; and Bradford testified that he reported the purchase of the Jebsen to the secretary. It also appears that the vouchers were made out in the name of I. F. Chapman & Co., bearing date June 4, 1898, and payment was made to Chapman & Co. It also appears that each party persisted in claiming the sale, and that in the course of the controversy it came

about that defendant agreed on Wednesday, the twenty-fifth day of May, by way of compromise, to accept payment from plaintiff, less two and one half per cent if paid by three o'clock the next day. Chapman came to defendant on time with the money that had been transferred by telegraph to him by plaintiff; he paid defendant $209,625, and defendant receipted to him for this amount,—i. e. "being $215,000, less $2\frac{1}{2}$ per cent commission," etc. It was, however, distinctly understood by both parties that defendant claimed that plaintiff was not entitled to any commission, and plaintiff claimed that he was entitled to full commission, and that the balance unpaid both understood was in dispute and was not to be paid unless legally enforceable in view of all the facts.

Construing the findings of the court to mean that the contract was one of brokerage, and accepting the finding as to the meaning of "prompt reply," but challenging the other findings as unsupported by the evidence, plaintiff contends,— 1. That a purchaser was procured by plaintiff and presented to defendant within the time limited; and 2. That plaintiff was the procuring cause of the sale, and it is therefore immaterial (1) whether or not defendant knew that the party with whom it was dealing was induced to do so through plaintiff's instrumentality, or (2) whether plaintiff during the negotiations knew that he was the moving cause of the sale, or (3) whether the sale was actually consummated after the expiration of the time limited. Plaintiff also claimed that defendant ratified the sale by plaintiff. Also that the time limit extended to Tuesday because the contract was made on Sunday. Defendant contends,—1. That plaintiff's right, whatever it was, whether to earn commission or to purchase the steamer, expired on Monday, May 23d, and that the evidence is clear that there was no person able, ready, and willing to purchase the steamer at that time; and 2. That plaintiff in any event did not find the purchaser and was not the moving cause of the sale.

As to the time limit, we think plaintiff had all of Monday in which to make the sale. His time had not expired when defendant attempted to withdraw its offer, and had plaintiff on Monday found a purchaser *then* ready, able and willing to purchase, he would have brought himself within the terms of the contract and would have earned his right to the commission. Defendant could not deprive plaintiff of this right

by revoking the authority given within the time limit. The
evidence as to the meaning of the condition "subject to
prompt reply" brings the case within the principle discussed
in *Blumenthal* v. *Goodall*, 89 Cal. 256, and distinguishes it
from *Brown* v. *Pforr*, 38 Cal. 550. The distinction lies in
the fact that in the latter of these cases there was no stipula-
tion that the contract should remain in force for the time given
in which to sell, while in the former there was such stipula-
tion, as we think there was here in effect. But in the former
case it also appeared that the purchaser was found within the
time limit, while in the present case defendant found no pur-
chaser within that time limit then ready and willing to
purchase this vessel.

Plaintiff's contention that because the agreement was en-
tered into on Sunday the limit extended to Tuesday cannot
be maintained. If the agreement had been made on Saturday
there would be force in the argument that Sunday would be
excluded under the statute. (Code Civ. Proc., sec. 11.) But
the contract was not then made; on the contrary, the parties
agreed on Saturday to meet on Sunday to make the agree-
ment, and it was then made, and Chapman, plaintiff's agent,
on that day telegraphed plaintiff the offer. Nor can plain-
tiff's contention that defendant ratified the sale by plaintiff,
and thus waived the time limit, be sustained. The facts clearly
show that, in accepting payment for the vessel through plain-
tiff, both parties reserved their respective rights as they re-
lated to the money now in question. And what money was
paid as commission was paid by way of compromise, defend-
ant distinctly disputing plaintiff's right to it under the
contract, and with equal clearness disputing his right to any-
thing further.

The question remains whether the procurement of a pur-
chaser by plaintiff subsequently to the expiration of the time
limit entitled him to commission.

In *Zeimer* v. *Antisell*, 75 Cal. 509, the court quotes from
*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 382: "The duty
assumed by the broker is to bring the minds of the buyer and
seller to an agreement for a sale; and the price and terms
on which it is to be made, and until this is done, his right to
commission does not accrue." The court then adds this fur-
ther rule: "It must appear that the broker performed the

duty assumed by him within the time limited in his contract, or within such extension of time as may have been granted by his employer. If he failed to do that, he is not entitled to the commission even though he made efforts to sell the property, and first called it to the attention of the party who subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner.'' (Citing *Fultz* v. *Wimer*, 34 Kan. 576; *Wilson* v. *Sturgis*, 71 Cal. 226.) See, also, *Clark* v. *Cumming*, 77 Ga. 64,[1] where the broker was given authority to sell ''for a certain time and day only.''

The Kansas case cited is directly in point and fully sustains the rule above stated. Mr. Mechem says: ''For many cases no more satisfactory general rule can be laid down than to ascertain,—1. What did the broker undertake to do? 2. Has he completed that undertaking within the time and upon the terms stipulated? and 3. If not, is the default attributable to his own act or to the interference of the principal? . . . It will be seen from this rule that where the time is limited, the performance must be within that time.'' (Mechem on Agency, sec. 965.)

Plaintiff cites this same author (sec. 967) where it is said: ''If the purchaser is found and negotiations are begun, within the time limited, it is immaterial that they were not fully consummated until afterwards.'' The case cited in support of the text is *Goffe* v. *Gibson*, 18 Mo. App. 1. In that case a leasehold was the subject of the sale, the agents having sixty days in which to effect a sale, and it was further stipulated that the owner reserved the right to sell, but if he made the sale ''in any wise through their [the agents'] influence or instrumentality, then I [the owner] will pay the above commission.'' While the contract had yet some weeks to run the agents brought the property to the attention of one Hastings, and pointed out to him that it was more valuable than similar property he was thinking of purchasing, whereupon Hastings, by reason of the fact of the agents having called his attention to the property, entered into negotiations with the owner before the expiration of the time limit and concluded the purchase shortly after the expiration of the limit. What the author probably had in mind is further illustrated by *Wilson* v. *Sturgis*, 71 Cal. 229. There the broker found a purchaser

[1] 4 Am. St. Rep. 72.

within the time limit, but the completion of the sale was, through the owner's fault, prolonged beyond the time limit, and apparently to avoid paying commissions. It is not easy to deduce a rule from the cases alike applicable to all of this class. The rule laid down in *Zeimer* v. *Antisell,* 75 Cal. 509, has never been questioned or overruled by this court, so far as we know, and must control the question. There is no evidence that plaintiff's failure to find a purchaser was caused by defendant's "negligence, fault, or fraud." Defendant's notice of withdrawal did not in any wise prevent plaintiff from finding a purchaser, and notwithstanding the persistent and uninterrupted efforts of plaintiff he did not find a purchaser ready and willing to purchase until late on Tuesday.

The failure of the court to find on the second count of the complaint will not justify a reversal. It is not claimed in plaintiff's brief that there was any evidence addressed to this issue, and in fact it was all directed to the alleged contract and sale under it. (*Eva* v. *Symons,* 145 Cal. 202.)

The finding that plaintiff, through his agent, Chapman, consented to the withdrawal of defendant's offer to sell the steamer rests upon very unsatisfactory evidence. But the view we have taken of the contract makes it immaterial whether plaintiff consented or not.

The judgment and order should be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.

Hearing in Bank denied.