[S. F. No. 6363. Department One.—April 30, 1914.]

GEORGE W. SILL, Respondent, v. BERNARDO CESCHI, Appellant.

BROKERS—REVOCATION OF AUTHORITY BY PRINCIPAL—WHEN NOT PERMISSIBLE.—Authority to a broker to sell specified real estate "for the term of thirty days from date hereof, and until this agreement is canceled in writing by ten days' notice," cannot be revoked within the thirty days, where the broker has expended money and effort in seeking a purchaser.

ID.—COMMISSION OF BROKER—EXCESS OVER STIPULATED PRICE—PAYMENT IN SOMETHING OTHER THAN MONEY.—A contract authorizing a broker to sell real estate for a specified sum within a certain time, and providing as payment for his services whatever amount he may obtain therefor over such sum, gives the broker the right to anything beyond that sum as his commission, and the principal, so long

as he receives such amount, is not interested in the terms agreed upon between the agent and the purchaser for the payment of the excess, nor in the fact that the excess is to be paid in something other than money, such as fruit growing on the land.

ID.—WHEN COMMISSIONS ARE EARNED—PROCURING OF PURCHASER.—The obligation of a broker, authorized to sell real estate upon certain terms, is fully performed when he procures from a prospective purchaser a valid contract to purchase, which can be enforced by the vendor if his title is perfect.

ID.—AMOUNT OF COMPENSATION—FRUIT GROWING ON LAND.—Where a contract authorizing a broker to sell certain real estate gives him as his commission all over a specified price, and the purchaser procured by him agrees to pay the price specified and further to make conveyance of the fruit growing on the land, the transaction is in effect an agreement to purchase the entire property and to return as part of the purchase price the fruit crop, which becomes the measure of the broker's compensation.

ID.—ACTION TO RECOVER COMMISSIONS—INSTRUCTIONS—WHETHER CONFLICTING.—In an action by the broker to recover his commission an instruction to the jury that "if you believe from the evidence that in executing the contract with plaintiff, the defendant understood that his apple crop was reserved from sale, you must return a verdict for the defendant," is not in conflict with another instruction, dealing with an entirely different matter, that if a person "executes a contract with another and before signing the same obtains independent advice as to the meaning and contents of the instrument and causes the same to be drafted by his own adviser and read over and explained to him by such adviser, he cannot afterward be heard to say that he did not understand it, and is not bound by it."

ID.—ERROR IN MODIFYING INSTRUCTION—WHEN HARMLESS.—Error, if any, in such action in modifying an instruction requested by the defendant as to the effect of misrepresentations made by the broker to him as to the nature of the writing signed by them, is without prejudice, if the evidence does not, under any view of the law, warrant a finding in favor of the defendant on the issue to which the instruction is directed.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Dougherty & Lacey, and George W. Smith, for Appellant.

Wyckoff & Gardner, and B. K. Knight, for Respondent.

SLOSS, J.—This is an action by a broker to recover commissions upon a sale of real estate. The trial was by jury, and plaintiff recovered a verdict and judgment in the sum of two thousand dollars. The defendant appeals from the judgment and brings up the evidence by means of a bill of exceptions.

The defendant was the owner of twenty-eight acres of land, most of which was orchard in bearing, situate in Santa Cruz County. On April 20, 1911, he signed and delivered to plaintiff a paper reading, so far as material here, as follows:

'          "Watsonville, Cal., April 20th, 1911.

"I hereby authorize George W. Sill, my agent for the term of thirty days from date hereof and until this agreement is canceled in writing by ten days' notice and under such appointment give him authority to sell and accept money for the sale, at the sum of $15,000.00, or as much less as I may hereafter agree to take, of the following described property" (describing the tract above mentioned), "together with this year's fruit crop, save and except the crop of cherries, pears and apricots for this year, also all farming tools and implements, save and except one fruit wagon, spring wagon, cart and two horses with set of harness for said horses.

"For his services in this matter *nil* promise to pay him *nil* per cent commission on the selling price of said property and one-half of any amount for which he may sell said property over the price herein asked by me, to wit: $15,000.00."

The complaint alleged that the parties had intended, in the clause last quoted, to provide for a compensation to the broker of the whole amount, over fifteen thousand dollars, for which a sale might be made and that the agreement to pay one-half of such excess had been inserted in the contract by mutual mistake. It was prayed that the agreement be reformed in this particular, and the judgment included such relief. No point is made on the present appeal with respect to this feature of the case, and no further discussion of it is required.

The complaint alleged, further, that on the nineteenth day of May, 1911, within thirty days after the authorization, plaintiff obtained purchasers who were ready, able, and willing to purchase the property in accordance with the terms of

the contract, for the sum of fifteen thousand dollars, and in addition thereto the crop of apples and grapes then standing and growing on the land. (The apple and grape crops, it will be noted, had not been excepted by defendant from sale, as had the crop of cherries, pears, and apricots.) Said purchasers offered in writing to pay the said price for said property, and plaintiff, as defendant's agent, accepted their offer in writing, but defendant refused and ever since refuses to sell or convey the property to such purchasers. On said nineteenth day of May, 1911, it is averred, the reasonable value of the crop of grapes and apples, to which plaintiff was entitled as his commission was and is the sum of three thousand five hundred dollars, for which amount judgment was asked. The complaint also contained two separate causes of action, each of which set up a claim for three thousand five hundred dollars in the form of a common count for work and labor done.

The answer denied most of the allegations of the complaint. It also set up several separate defenses. One of these was to the effect that the defendant was unable to read English, and understood the English language, when spoken, very imperfectly. It alleged that plaintiff had induced defendant to sign the authorization by representing to him that the writing was a mere notice that the lands were for sale, and defendant signed the writing relying upon such representation. Another, after repeating the matter regarding defendant's want of familiarity with the English language, alleges that by the mistake of the defendant, suspected by plaintiff, the contract failed to provide for reserving from sale the apple and grape crops. A third separate defense is that defendant canceled the contract before plaintiff had done anything thereunder.

The verdict of the jury was, as has already been stated, in favor of plaintiff for two thousand dollars. One of appellant's contentions is that the verdict was not justified by the evidence. The signing of the contract, as alleged in the complaint, was testified to by two witnesses, and was, indeed, admitted by the defendant in his testimony. One Huff, who was an employee of plaintiff and had represented him in the negotiations with Ceschi, testified that plaintiff had advertised the property for sale, and submitted it to several prospective

purchasers, prior to April 29, 1911. On that day defendant handed him a written notice stating that he canceled the agreement. At the same time, however, the defendant, according to this witness, on being told that plaintiff was absent, had said "all right, go on and sell it." This fully justified a finding against the separate defense setting up a cancelation. Besides, since the authorization was for thirty days, a revocation within that period would not have been effectual, if plaintiff, prior to the attempted cancellation, had expended money and effort in seeking to find a purchaser. (*Blumenthal* v. *Goodall,* 89 Cal. 251, [26 Pac. 906] ; *Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671, [79 Pac. 354].) The issue of cancellation was submitted to the jury upon an instruction presenting this view of the law. Huff further testified that on May 19, 1911, he, acting for plaintiff, obtained from George M. and Belle Latimer, an offer to buy the property at the price of fifteen thousand dollars, and also the apple and grape crops. The written offer was introduced in evidence, and it was stated therein, as was the fact, that the Latimers had, at the same time, paid plaintiff one thousand dollars as a deposit and part payment, agreeing to pay the balance of fourteen thousand dollars and to give a conveyance of the apple and grape crops upon delivery of abstract, reasonable time for examination of same, and good and sufficient deed of conveyance of the ranch. The defendant was in Italy at the date of this transaction, and the offer, with the one thousand dollars, was delivered by plaintiff to Mr. C. A. Palmtag, an officer of the Pajaro Valley Bank, who was a trusted adviser of the defendant. On the defendant's return from Italy he refused to carry out the contract or to pay plaintiff any commission. The Latimers were, as the testimony shows, willing and able to pay the purchase price which they had offered for the property. There was evidence justifying the conclusion that the apple and grape crops, which represented the excess of the purchase price over fifteen thousand dollars, were worth two thousand dollars, the amount of the verdict in plaintiff's favor. The defendant sold his apple and pear crops for a figure which brought him a net return of two thousand five hundred dollars, of which eight hundred was, as testified by the purchaser, the value of the pears, leaving one thousand seven hundred dollars as the proceeds

of the apples.    The plaintiff produced a witness who testified
that the grape crop was worth three hundred dollars.

Omitting for the moment consideration of the affirmative
defenses other than that of cancellation, which has already
been considered, the evidence above outlined fully warranted
the verdict of the jury.    Under the contract, the plaintiff was
authorized to sell upon any terms which would give to the
defendant a cash return of fifteen thousand dollars.    The
plaintiff was entitled to anything beyond this sum as his
commission, and the defendant, so long as he received his
fifteen thousand dollars, was not interested in the terms
agreed upon between the agent and the purchaser for the
payment of the excess (*Robinson* v. *Easton, Eldridge & Co.,*
93 Cal. 80, [27 Am. St. Rep. 167, 28 Pac. 796]), nor in the
fact that that excess was to be paid in something other than
money.    There is no force in the claim that plaintiff did not
prove such performance as entitled him to a recovery of the
commission agreed upon.    The contract authorized him to sell
the property upon certain terms.    His obligation was fully
performed when he procured from a prospective purchaser
''a valid contract to purchase, which could be enforced by
the vendor if his title were perfect.''    (*Gunn* v. *Bank of
California,* 99 Cal. 349, 353, [33 Pac. 1105], and cases cited;
*Jauman* v. *McCusick,* 166 Cal. 517, [137 Pac. 254].)    Such
contract was obtained by plaintiff from the Latimers.    By
their written offer they bound themselves to buy the property
described in defendant's authorization for fifteen thousand
dollars, plus the apple and grape crops which were a part of
the property to be sold.    This was in effect an agreement to
purchase the entire property covered by the authority to sell,
and to return, as a part of the purchase price, the apple and
grape crops.    Such crops, or their value, then became the
measure of the compensation to which the broker was en-
titled.

At the request of the defendant the court gave the follow-
ing instruction numbered I:

''You are instructed that in order to constitute a contract
there must be a meeting of the minds of the contracting par-
ties upon the terms of the contract.    If you believe from
the evidence that in executing the contract with plaintiff,

the defendant understood that his apple crop was reserved from sale, you must return a verdict for the defendant.''

Of this statement of the law affecting the plea of mistake with reference to the reservation of certain crops, the defendant cannot, and does not, complain. Nor can there be any doubt that the evidence on this issue was conflicting to such a degree as to put the finding of the jury thereon beyond the possibility of attack here.

A further instruction requested by defendant read as follows:

"If you believe from the evidence that Huff told the defendant that the contract in question was a mere memorandum and that the defendant, without negligence on his part, did not understand the true purport of said contract you must return a verdict for the defendant.'' This instruction, which appears in the record as number VII, the court gave, after modifying it by the addition of the following: "But in this connection I instruct you that if a person signs and executes a contract with another and before signing the same obtains independent advice as to the meaning and contents of the instrument and causes the same to be drafted by his own adviser and read over and explained to him by such adviser, he cannot afterward be heard to say that he did not understand it and is not bound by it; under such circumstances, the signer is bound by the contract he signs.''

The appellant insists that the instruction, as modified, lays down an erroneous statement of the law, and further, that it is in conflict with instruction I, above quoted. But it cannot be said that there is any conflict between the two instructions, since they deal with entirely distinct matters. Instruction I applies to the defense based on the alleged mistake regarding the crops included in the contract. Instruction VII has to do only with the averments, set up separately in the answer, that the plaintiff had misrepresented the nature and effect of the writing signed by defendant. The only question is whether the modification of instruction VII was erroneous, and if so, whether the error prejudicially affected the defendant's rights. For the purposes of this discussion it may be assumed that the instruction proposed should not have been modified as it was. Even so, we are satisfied that no prejudice resulted to the defendant, for the reason that

the evidence would not, under any view of the law, have warranted a finding in his favor on the issue to which instruction VII was directed. Huff, the plaintiff's agent, testified that on April 20, 1911, he had applied to the defendant for a contract authorizing plaintiff to sell the ranch. The defendant declined to sign any contract or authorization until he had consulted with C. A. Palmtag of the Pajaro Valley Bank, who attended to all his business. The defendant and Huff went together to the office of Palmtag. There, in the presence of Palmtag, the terms of the proposed contract were discussed, and Palmtag drew up the form of agreement and read it aloud twice. The defendant expressed his satisfaction, saying that he wanted to get fifteen thousand dollars net for the property, and thereupon signed the paper. This testimony, so far as it related to the transaction in the bank, was in substance, corroborated by Mr. Palmtag. The defendant himself, when called as a witness, stated that he had told Huff that he would be willing to sell the land, without any of the crop, for fifteen thousand dollars net to him, but that he would not sign any contract until he had seen Palmtag. He then went with Huff to the bank, and both talked with Palmtag "as to the kind of a contract we wanted." Palmtag told him what the contract was, that it was "for him to receive fifteen thousand dollars net." The defendant so understood it. Palmtag read the paper. The defendant did not pay any attention to the matter of the fruit crops. Palmtag, after reading the paper, asked defendant if he was satisfied, and the defendant answered that he was. He then signed the contract and gave it to Huff. As against all this, showing plainly, on the defendant's own statements, that he fully understood that he was signing a contract authorizing the sale of his ranch, there is nothing but the following vague declarations at the close of defendant's testimony. "Mr. Huff," he testified, "did not tell me if it was a binding contract of any kind, but said it was only a memorandum. I thought it was just a notice that my ranch was for sale. I believed that contracts about selling lands were written on large papers and did not know that a little slip of paper like this contract was used for such purposes." The testimony of the other witnesses, supported by that of the defendant himself, showed conclusively a course of conduct entirely inconsistent with the

existence of the belief which the defendant, in the testimony last quoted, claims to have entertained. His admissions were direct to the effect that he undertook to contract for the sale of his land, that he insisted on consultation with Mr. Palmtag, that the terms of the contract were fully discussed with his adviser, that the latter drew a contract and explained it to him, and that he then signed it. In the face of these admissions, corroborated, as they were, by unimpeached testimony, a finding that he did not understand the nature of the instrument, if such finding had been made, could not have been upheld as supported by the evidence. The vague statements of appellant that he thought he was signing a mere notice that his land was for sale were not enough to raise a substantial conflict. It may be added that the defendant, notwithstanding his claim of inability to understand the English language, gave his testimony without the aid of an interpreter. Under all the circumstances the trial court would have been warranted in directing the jury to find for the plaintiff on the issue under consideration. (See *Estate of Baldwin,* 162 Cal. 471, 473, [123 Pac. 267], and cases cited.) Any error in the instructions would not, therefore, afford ground of complaint to the defendant.

There are no other points made.

The judgment is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.