[Civ. No. 3569. First Appellate District, Division Two.—March 23, 1921.]

## WRIGHT & KIMBROUGH (a Corporation), Respondent, v. C. W. DEWEES et al., Appellants.

[1] Broker's Commissions—Recovery of—Procuring Cause of Sale —Completion of Transaction.—In order to entitle a real estate broker to recover commissions under the ordinary broker's contract the evidence must show that he was the procuring cause of the sale and that the transaction was completed within the time limited in the contract, unless the delay was caused by the negligence, fault, or fraud of the owner.

---

1. When real estate broker is considered as the procuring cause of sale or exchange effected, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225; 44 L. R. A. 321; 21 L. R. A. (N. S.) 328.

[2] ID. — PROCURING CAUSE OF SALE — UNSUCCESSFUL EFFORTS OF
BROKER.—Where a real estate broker's contract contains a provi-
sion that if the property is "sold to a party to whose attention
said property was brought through the agency of said agent" the
broker shall receive five per cent "as a commission for promoting
said sale," this language imports an obligation on the part of the
broker, to entitle him to commissions, to do something more than
merely show the property and make unsuccessful efforts wholly
unconnected with and to no extent traceable to the subsequent
sale, and such language does not take the contract out of the
general rule requiring the broker to be the procuring or efficient
cause of the sale in order to entitle him to commissions.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. E. P. Shortall,
Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. A. Sitton, Elliott & Atkinson and Oliver Ellsworth
for Appellants.

Downey, Pullen & Downey and Joseph L. Knowles for
Respondent.

NOURSE, J.—Defendants appeal from a judgment ren-
dered against them in the sum of $600 for commissions,
with interest and costs. The action arises out of a con-
tract for the sale of real estate between defendants, the
owners, and plaintiff, a corporation engaged in the real
estate business, and containing, among others, the follow-
ing provision: "The said 'seller' agrees should a sale or
exchange of said above described property upon said or
any satisfactory terms be effected during the period of time
hereinafter named, by either party to this agreement, or
any other party, or after determination of this contract,
if sold to a party to whose attention said property was
brought through the agency of the said 'agent,' that the
said 'agent' shall receive out of the first payment made on
said property five per cent of the price for which said
property was sold as a commission for promoting said
sale." The contract, dated January 7, 1916, was for sixty
days and thereafter until the expiration of ten days'
written notice, and the price named therein was $18,000

cash. After the termination of the contract defendants personally sold the property to one Mull.

The question here presented is the proper construction of the above clause. There is no substantial conflict in the evidence. It appears that Mr. Mull and his wife were well acquainted with the property, defendants' residence located in Sacramento, before plaintiff entered into the situation. More than a year before defendants contracted with plaintiff for its sale the Mulls were looking at other property in the neighborhood, with the object of buying, and defendants at that time talked to Mr. Mull and endeavored to sell their home to him. Thereafter the Mulls frequently looked at the property from the outside of the house, and talked with defendants about it, the last conversation occurring just prior to contracting with plaintiff. No offer, however, was made to defendants as a result of these conversations. When plaintiff interviewed the Mulls regarding the property, they told him they knew it was for sale. Defendants also told plaintiff, after the contract was signed, that the Mulls were interested in the property and were good prospects. Plaintiff likewise was unsuccessful in obtaining an offer from the Mulls, although he took them to see the property once or twice, being the first to show them the interior of the house, and endeavored to sell it to them. Mr. Wright, plaintiff's representative in this matter, then reported to defendants that the Mulls were no longer interested in the property and to forget about them as prospective purchasers, that he had seen plans which they had prepared for a home which they intended building. Thereafter and on March 31, 1916, defendants served upon plaintiff written notice of cancellation of the contract as therein provided, no sale having been made, and no offer whatever having been obtained from Mr. Mull. About a month later plaintiff solicited a new contract of sale from defendants, which they refused. The matter was dropped, so far as the Mulls were concerned, until several months later, when negotiations were entered into between Mull and defendants, as the court found, without fraud as to plaintiff. In January, 1917, about nine months after the contract was canceled, and after plaintiff had ceased all negotiations in the matter, Mull offered defendants $12,000, for which defendants sold

to them.  Mr. Mull testified that he was not influenced in the purchase by anything which plaintiff did, and had dismissed the proposition entirely from his mind; that he did not come to the conclusion to pay $12,000 for the property until practically the day he bought it, when Mr. Dewees offered to sacrifice it.  Defendants had, during the life of the contract, refused an offer of $16,000 made by another client of plaintiff.  The court found "that plaintiff took no part in these subsequent and final negotiations which resulted in said sale," but nevertheless gave judgment for plaintiff.

[1]  The law is well settled by a long line of decisions that in order to entitle a broker to recover commissions under the ordinary broker's contract the evidence must show that he was the procuring cause of the sale.  "The rule is that to entitle a broker to a commission for the sale of real estate which he has been given by the owner authority to sell, he must produce before the owner a purchaser ready, willing and able to purchase at the price and on the terms specifically expressed in the contract of employment.  While a change made by the owner, when consummating the sale, in the price of the land or the terms of the sale from those specified in the broker's contract cannot of itself affect or impair in any way the right of the broker to his commission, the latter cannot claim a commission unless his efforts are the procuring or inducing cause of the sale. . . . 'In order for the broker to recover, the evidence must show that his efforts were the procuring cause and not merely one in a chain of causes.' "  (*Roth* v. *Thomson,* 40 Cal. App. 208, [180 Pac. 656]; *Waterman* v. *Boltinghouse,* 82 Cal. 659, [23 Pac. 195]; *Snook* v. *Page,* 29 Cal. App. 246, [155 Pac. 107]; *Dolan* v. *Scanlan,* 57 Cal. 261; *Ayres* v. *Thomas,* 116 Cal. 140, [47 Pac. 1013].)  The evidence must also show that the transaction was completed within the time limited in the contract, unless the delay was caused by the negligence, fault, or fraud of the owner.  (*Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671, 677, 678, [79 Pac. 354]; *Brown* v. *Mason,* 155 Cal. 155, [21 L. R. A. (N. S.) 328, 99 Pac. 867]; *Naylor* v. *Ashton,* 20 Cal. App. 544, [130 Pac. 181].)  The obvious purpose of the insertion in the above-quoted clause of the words: "or after termination of this con-

tract, if sold to a party to whose attention said property was brought through the agency of the said agent,'' was to protect plaintiff for his efforts during the life of the contract resulting in a sale not consummated until after the termination of the contract. As said in *Kimmell* v. *Skelly*, 130 Cal. 555, 559, [62 Pac. 1067, 1068]: ''The parties to a brokers' contract are at liberty to make the compensation of the broker depend upon any lawful conditions they see fit to place therein. The single question is, What does the contract provide?'' The contract in the instant case is distinguishable from the provision of the contract under construction in the decision in that case, also in *Rucker* v. *Hall*, 105 Cal. 425, [38 Pac. 962], and *Maze* v. *Gordon*, 96 Cal. 61, [30 Pac. 962]. In *Kimmell* v. *Skelly* the contract provided for employment as sole and exclusive agents at a fixed compensation in case of a sale by anyone during the term of their employment. In *Rucker* v. *Hall* the contract provided if the owner found a purchaser independent of the agents, she would pay them one-half of the specified commission on a sale to their customer ''as compensation for their services in advertising,'' etc. In *Maze* v. *Gordon* the brokers' contract was for twelve months and provided for payment of commission ''in the event of withdrawing the sale of said property during said time.'' **[2]** Here the contract provided ''if sold to a party to whose attention said property was brought through the agency of said agent'' the broker shall receive five per cent ''as a commission *for promoting said sale.*'' This language imports an obligation on the part of the broker, to entitle him to commissions, to do something more than merely show the property and make unsuccessful efforts wholly unconnected with and to no extent traceable to the subsequent sale. His commissions depended entirely upon results accomplished— for ''promoting'' or procuring the sale. There is nothing in the language of this contract which takes it out of the general rule requiring the broker to be the procuring or efficient cause of the sale in order to entitle him to commissions.

The principles stated in *Strout.* v. *Hubbard*, 104 Me. 366, [71 Atl. 1020], and *Moore* v. *Holman Real Estate Co.*, 129 Ark. 465, [196 S. W. 479], cited by respondent, are in conflict with this rule. However, in the former case the facts

were far more favorable to a recovery measured by the
"procuring cause" requirement than in the instant case.
The broker, during the life of the contract, obtained an
offer from the subsequent purchaser and brought him into
negotiations with the owner. The latter rejected the offer.
Five days later he canceled the contract, and but one week
later sold to the same party for only $120 more than the
offer obtained by the broker. It appears from the facts
stated in *Moore* v. *Holman* that the broker's efforts were
the procuring cause of the sale, which was made within two
months from the expiration of the contract, and that he
was justly entitled to his commissions. The contract pro-
vided for payment of commissions to the broker if the prop-
erty should be sold "on information secured through this
agency." The dissenting opinion criticised the reasoning of
the majority opinion, saying a sale "on information se-
cured through this agency" should be construed to mean on
information sufficient to constitute the moving cause of the
sale.

In *Williams* v. *Leslie,* 111 Ind. 70, [12 N. E. 102], the
provision of the contract under construction was: "If a
customer is *introduced through the agency of the said Leslie*
[the broker], and a sale is afterward consummated with
such customer, I agree to pay the commission before men-
tioned, whether the time of this agreement shall have ex-
pired or not." (Emphasis added here.) The court said:
"The effect of that clause was that, in the event of a sale,
when or by whomsoever consummated, if made to a customer
introduced through the agency of Leslie,—that is, *if the
latter was the procuring cause of the sale,*—he was to have
his commission." (Emphasis added here.) In *Shipman* v.
*Wilkeson,* 112 N. Y. Supp. 895, in which the facts were very
similar to those in the instant case, the decisive question
was the meaning of the clause in the contract entitling the
broker to commission if the farm was sold after the expira-
tion of the contract "on information obtained through your
agency." The court said: "The only valid purpose of the
stipulation in question must be to protect the broker from
loss of compensation for successful efforts in procuring a
purchaser, culminating in a sale on the stipulated terms
after the broker's authority to effect a sale has terminated.

It is a shield to protect the agent, not a sword to injure his principal.''

For the reasons given the judgment is reversed.

Langdon, P. J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1921.

All the Justices concurred, except Wilbur, J., who was absent.