[Civ. No. 2588. Third Appellate District.—March 28, 1923.]

## RICE LANDS AND PRODUCTS COMPANY (a Corporation), Appellant, v. R. E. BLEVINS et al., Respondents.

[1] Contracts — Option — Time of Essence — Equity. — While frequently the time for acceptance of an option to purchase is limited in the offer, and in such cases the acceptance must be within the time specified, as a general rule time is of the essence of an option to purchase within a specified time, without being expressly made so by the contract; and the rule that in equity time is not of the essence of a contract does not apply to a mere offer to make a contract.

[2] Id.—Payment of Commissions—Expiration of Option—Oral Extension.—Where the agreement to pay a commission for securing a purchaser for real property is dependent upon an option contract to purchase said property and the time for acceptance of the option is limited, the commission agreement expires with the option; and the time limited in such commission agreement cannot be extended by an oral agreement.

[3] Id.—Waiver of Commissions—Consideration.—The agreement by the vendors of real property to sell the property on terms to which they had not obligated themselves under a prior option contract was a sufficient consideration for the agreement of the agent to waive any right he may have had to commissions on the sale, the agent's commission agreement having been dependent upon the option contract and, although he originally acted as the agent of the vendors, he having been a stockholder and officer of the corporation vendee and having acted in its behalf at the time of the agreement to waive his claim for commissions.

[4] Id.—Payments to Agent—Inferences—Explanation—Evidence. In this action to recover commissions alleged to be due in connection with the sale of certain real property for the defendants, plaintiff having proved the entry in defendants' books of certain credits made after the date of the sale, in the form of commissions, which entries tended strongly to prove that defendants understood they were obligated to pay the commissions claimed by plaintiff and, also, to discredit the testimony of defendants to the effect that the agent had agreed to waive such commissions, to overthrow the inference naturally arising from such acts on their

2. Right of broker to commissions on sale by owner to customer introduced by broker, notes, 139 Am. St. Rep. 225; 9 Ann. Cas. 433; Ann. Cas. 1913D, 821; 21 L. R. A. (N. S.) 328.

part the defendants were properly permitted to explain why they gave the credits and made the entries thereof in their books in the form of commissions.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

Nusbaumer & Bingaman, Henshaw & Black and Gilbert L. Jones for Appellant.

Frank Freeman and Brown & Alberry for Respondents.

FINCH, P. J.—May 17, 1915, defendants gave C. F. Adams a written option to purchase 2,988 acres of land, the greater part of which was in rice, together with water rights, pumping, and equipment, and rights of way. It appears that defendants owned a half section of the land and held the remainder under lease with agreement to purchase. They had in turn leased parts of the lands to tenant rice-growers. The option provided:

"We will convey to you clear title to all the above land, and transfer all rights, privileges, leases, etc., relating to the entire project for the net sum of $80.00 per acre, to be paid for the 2988 acres above described.

"Terms—$35,000 cash and the balance in six annual equal payments. The deferred payments to bear six per cent interest, or upon payment of $5000.00 we will agree to give possession of property on December 1, 1915. The further sum of $30,000.00 is to be paid on December 1, 1915, and the remainder in six equal payments with interest. The above option to purchase is not exclusive and is good for acceptance within 60 days, unless property is sold within this period to other parties."

On the same day, by a separate writing, defendants gave Adams their promise to pay him a commission in the event of a sale, reading as follows:

"Referring to the option of May 17th for purchase of the property of the Blevins-Mallon Rice Project, should you be able to procure a purchaser for the above property we will allow you a sale commission of ten per cent. This com-

mission will be paid to you as the payments are received from the purchaser."

Defendants also gave George F. Scott and J. F. Campbell an option to purchase the same property and on June 7, 1915, they paid the defendants $1,000 on account thereof. Within a few days thereafter Adams, Scott, and Campbell agreed to act together in the sale of the property under the Adams option and the Scott-Campbell option was allowed to lapse.

In the latter part of June Adams, Scott, and Campbell proceeded to organize the plaintiff corporation for the purpose of purchasing the property under the option. The articles of incorporation were filed with the Secretary of State on the thirty-first day of July, 1915. July 17th the sum of $1,000 was paid on the option and the defendants executed the following instrument:

"Received from C. F. Adams $1000.00 on account as per contract of May 17, 1915, said contract is hereby extended to August 1, 1915."

Defendants credited the payment in their ledger account with "Scott, Campbell & Adams." The payment does not appear in their journal. Other payments, including that made by Scott and Campbell on June 7th, were entered in the journal as follows: "June 7 Scott, Campbell & Adams 1000 . . . on option acct. . . . Aug. 17 Scott, Campbell & Adams 1000 . . . on contract. Aug. 25 Scott, Campbell & Adams 1000 . . . on contract. . . . Sept. 15 Scott, Campbell & Adams 1500 . . . on a/c. . . . Oct. 8 Scott, Campbell & Adams 1000 . . . on contract."

October 11, 1915, the parties entered into two agreements by the terms of which the defendants agreed to sell and the plaintiff to purchase the property described in the option of May 17th. The total purchase price under the two agreements of October 11th is the same as that stated in the option contract, but the latter contract is not referred to in either of the former. One of the contracts of October 11th recites that $5,945 had theretofore been paid by plaintiff, and the evidence shows that this sum was made up of the payments heretofore enumerated and an additional sum due Adams from defendants. This contract provides for installment payments as follows: October 12, 1915, $5,000; October 20, $5,000; November 9, $10,000; December 1, $14,-

500; February 1, 1916, $5,000; payment of defendants' promissory note to a third person, $5,000; and four annual installments of $15,488.75 each, the first thereof to be paid December 1, 1916. By the other agreement the defendants sold all their rights and interests in the remainder of the lands and property described in the option contract for the sum of $20,000, payable in four equal annual installments commencing December 1, 1916, the plaintiff to take such property subject to all the terms and conditions of the lease under which it was held by defendants and to discharge all defendants' obligations under the lease. The lands described in both agreements were taken subject to various leases made by defendants to their tenants. The plaintiff was given immediate possession and all of defendants' interest in the growing crops, and was required to reimburse defendants for certain expenditures made by them in cultivating a part of the land and to pay all power bills from July 23, 1915, and for pump and ditch attendance from August 1st. Plaintiff has performed all the terms of both agreements.

December 4, 1916, Scott, Campbell, and Adams assigned to plaintiff their claim for commissions under the contract of May 17, 1915, and plaintiff duly notified defendants of such assignment. The defendants gave credit, at the rate of ten per cent on installment payments, until the sum of $5,904.37 had been so credited, after which they refused to allow or pay any further sum. After payment of the full purchase price plaintiff instituted this action to recover the remainder alleged to be due as commissions.

The complaint alleges the execution of the contracts of May 17, 1915, the sale of the property in pursuance thereof, and "within due time," and the assignment to plaintiff of Adams' claim for commissions. The answer denies that Adams sold the property in accordance with the terms of the contract, or "within due time," and alleges that plaintiff, after the option "had been abrogated and annulled and had expired by lapse of time," purchased the property "on entirely different terms of payment." As a separate defense, the answer alleges that "said written option lapsed and became null and void, because the same was not exercised within the time provided therein, or as provided in any written extension thereof, and that thereafter, these defend-

ants made a verbal agreement with the said C. F. Adams in reference to the sale of said property, and that said verbal agreement was fully carried out and consummated on the eleventh day of October, 1915; . . . that . . . in consideration of these defendants giving credit to the said C. F. Adams and the plaintiff herein for sums theretofore paid under the terms of said written option, the said C. F. Adams waived, released and renounced any right or claim that he might have had or did have to any commissions from these defendants on account of the sale of said real property and said rice project.'' The jury returned a verdict in favor of defendants and judgment was entered accordingly. The court denied plaintiff's motion for a new trial and this appeal is from the judgment.

It is evident that the commission contract is not complete in itself. It expressly refers to the option contract and the latter must be looked to for the purpose of ascertaining the terms of the sale referred to in the former. Appellant says: ''It is manifest that the reference is thus made for the twofold purpose of describing the properties subject to sale, and of setting forth the terms of payment. To say that the right to secure and present a purchaser was limited to sixty days is to write into the contract a term which the vendors might have prescribed but did not.'' It is not apparent, however, why the reference should be held to embrace some of the terms of the option contract to the exclusion of other terms. Both instruments were executed at the same time and, evidently, as a part of the same transaction and they must be construed together as one contract. The plaintiff sets up the option contract as the contract of employment to make the sale. It is alleged: ''That on the 17th day of May, 1915, the defendant in writing did employ one C. F. Adams to sell a certain rice project and certain real property . . . all situated in the County of Colusa, and described in said writing as follows.'' Following this allegation the option contract is set forth at length, except the last two clauses thereof. It is then alleged that defendants agreed to pay a commission of ten per cent ''in case a sale of said property was made in accordance with the said writing.''

On July 17th defendants, in writing, extended the term of the option to August 1st. There is no pretense that

Adams succeeded in selling the property prior to October 11, 1915. Plaintiff never became obligated to take the property before that time, nor is there any evidence that plaintiff was financially able to pay the purchase price until October 11th. Adams testified that, about October 8th, he told defendants "that we were going ahead with the original project and raise the money by the sale of stock and complete the purchase." Appellant recognizes that nothing which occurred prior to October 11th bound defendants to carry out the option contract. In its opening brief it is said: "About five months elapsed from the date of the Adams option agreement to the date when all negotiations terminated in a binding contract between defendants and the purchaser whom Adams produced. During every day of that five months it was open to defendants to find another purchaser or to entertain any offer made them by any other person than plaintiff." There was no written extension of the time provided in the option contract beyond August 1, 1915. Defendants testified that there was no oral extension thereof. Mallon testified that about August 10th he told Adams that "the contract was dead Mr. Blevins had given, and we would have nothing to do with it."

[1] It may be stated as a general rule that time is of the essence of an option to purchase within a specified time, without being expressly made so by the contract. "Frequently the time for acceptance is limited in the offer. This is usually done in the case of options. In such case the acceptance must be within the time specified. A limitation of the time for which a standing offer is to run is equivalent to the withdrawal of the offer at the end of the time named. The rule that in equity time is not of the essence of a contract does not apply to a mere offer to make a contract. An acceptance after the time limited in the offer will not bind the person making the offer, unless he assents to the acceptance so made after it is made." (6 R. C. L. 609.)

[2] The option contract having expired on the 1st of August, the defendants were at liberty to treat it thereafter as if it had never existed. Since the agreement to pay a commission was dependent upon the option contract, the former expired with the latter, and Adams' agency to sell the property was at an end. To entitle an agent to a

commission, he must make a sale within the time limited by his contract of agency. "It must . . . appear that the broker performed the duty assumed by him within the time limited in his contract, or within such extension of time as may have been granted by his employer. If he failed to do that he is not entitled to the commission, even though he made efforts to sell the property, and first called it to the attention of the party who subsequently made the purchase, unless the delay was caused by the negligence, fault or fraud of the owner." (*Zeimer* v. *Antisell,* 75 Cal. 509, 512 [17 Pac. 642, 643]; *Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671 [79 Pac. 354]; *Hicks* v. *Post,* 154 Cal. 22 [96 Pac. 878].) "The evidence must also show that the transaction was completed within the time limited in the contract." (*Wright & Kimbrough* v. *Dewees,* 52 Cal. App. 42 [197 Pac. 957].) The time limited in such a contract cannot be extended by an oral agreement. (Civ. Code, sec. 1624, subd. 6; *Hicks* v. *Post, supra.*)

In considering the evidence it must be kept in mind that Adams was acting in a twofold capacity, though not improperly so, as the fact was known to both parties. Originally he was defendants' agent to sell the property. After the incorporation of plaintiff he was its active agent in the purchase of the property. He testified that all payments prior to October 11th were made and received under the original contract. Defendants testified that no payments between August 1st and October 11th were made or received under the original contract. Mallon testified that he notified Adams early in August, and prior to the first payment made in that month, that the contract of May 17th was dead and that defendants would have nothing more to do with it; that they would not enter into any agreement and that Adams did not thereafter ask for any written option. Under the foregoing state of the evidence the court instructed the jury that if the defendants, after August 1st and prior to October 11th, notified Adams that "his option or contract to purchase and his option for commissions" had expired and would not be renewed or that they canceled the same, and that subsequently a sale of the property was made upon different terms and conditions and as a new proposition, then the plaintiff could not recover. Appellant contends that this instruction is based upon "the mistaken conception

of the law that the commission agreement came to an end with Adams' option agreement to purchase.'' What has already been said disposes of this contention.

[3] Three witnesses testified that in the negotiations leading up to the execution of the agreements of October 11th it was expressly agreed that no commissions were to be paid for making the sale. Adams testified that no such agreement relative to commissions was made. The court instructed the jury that if such agreement was made and constituted ''a new proposition to purchase'' the plaintiff could not recover. Adams was a stockholder and officer of the plaintiff corporation and was acting in its behalf at the time of the alleged agreement to waive his claim for commissions. The terms of the agreements of October 11th were materially different from those of the option contract. By the terms of the latter Adams had the right to make a cash payment of $35,000 and take immediate possession or to pay $5,000 cash, $30,000 on the first of December, and take possession on the latter date, at which time the crops probably would have been harvested and removed by defendants. By the terms of the agreements finally executed, plaintiff was given credit for $5,945 theretofore paid by Scott, Campbell, and Adams, and was required to pay $5,000 the following day and installments thereafter, which, up to December 1st, amounted to the additional sum of $29,500, and was given immediate possession, together with defendants' interests in all of the crops. If it be assumed that the option and commission contracts were continued in full force up to the time of the final agreements, they did not obligate defendants to sell the property on the terms provided in such final agreements. The agreement of defendants to sell the property on terms to which they had not obligated themselves was a sufficient consideration for Adams' agreement to waive any right he may have had to commissions. Other errors claimed to have been made in the instructions to the jury are similar to those discussed and need not be specifically considered. It is sufficient to say that no error appears in any of them.

[4] Plaintiff proved the entry in defendants' books of certain credits, made after October 11, 1915, in the form of commissions, as heretofore stated. Those entries tended strongly to prove that defendants understood that they were obligated to pay the commissions claimed by plaintiff and,

also, to discredit the testimony, of Blevins and Mallon to the effect that Adams had agreed to waive such commissions. In an effort to overthrow the inference naturally arising from such acts on their part, both of the defendants testified that Scott had originally been associated with them in their rice project, but that, after rendering services and expending money in the furtherance of the enterprise, he had been compelled to . drop out on account of financial inability to continue; that, after the sale of the property, the defendants agreed that they were under moral obligations to reimburse Scott and, therefore, gave the credits referred to, and that the credits were given in the form of commissions as payments were received on the purchase price of the property because that was more convenient than to make such reimbursement in a single payment, but that such credits were not intended as the commissions provided for in the contract of May 17, 1915. Mallon was permitted, over plaintiff's objection, to give the details of the conversation between himself and Blevins, no one else being present, in which it was agreed between them to make such reimbursement and the manner in which it would be made. Blevins testified that thereafter, and prior to the assignment of Adams' claim for commissions to plaintiff, he related the substance of this conversation to Scott and Campbell and fully explained to them what the defendants proposed to allow in the form of commissions and the reasons therefor as stated. It was proper to permit defendants to explain why they gave the credits and made the entries thereof in their books in the form of commissions, but it does not appear upon what theory the details of the conversation between them was admissible. The conversation, however, was not substantially different from the testimony of the defendants as to the reasons for their acts and it is not believed that the jury could have been influenced by its admission.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 24, 1923.