35 Cal.Rptr. 611

Appellate Department, Superior Court, San Diego

[Civ. A. No. 277115; Oct. 24, 1963.]

RAY A. KORSTAD et al., Plaintiffs and Respondents, v. HOWARD E. HOFFMAN, Defendant and Appellant.

Frank Pomeranz for Defendant and Appellant.

Swing, Scharnikow & Lewis and Bernard L. Lewis for Plaintiffs and Respondents.

Before Glen, P. J., Monroe, J., and Toothaker, J.

THE COURT.—The defendant appeals from a judgment awarding to the plaintiffs, real estate brokers, a commission of $1,800 in connection with the sale of a vacant lot owned by defendant. ▮ The facts as established by the findings of the trial court are as follows:

On February 19, 1962, the defendant, Howard Hoffman, signed a document entitled ''Cooperative Exclusive Right Listing Agreement'' with a salesman representing the plaintiffs. The property, a vacant lot on Point Loma, was listed at $23,500. The provisions of the listing material to this decision are as follows:

''It is understood that the undersigned Agent is a member of the Pt. Loma-Ocean Beach Realty Association, and it is further understood and agreed that said Agent shall refer this listing, in accordance with the rules, regulations and/or

by-laws governing same, to and for the benefit of all members of the Pt. Loma-Ocean Beach Realty Association, later referred to as listing associates, and that such members may act as agents in procuring or attempting to procure a purchaser in accordance with the terms of this agreement.

"In consideration of the services to be performed hereunder, I hereby list with said Agent, exclusively and irrevocably from date hereof to and including the 20 day of April, 1962, the property described above, and I hereby grant said Agent and/or listing associates the exclusive and irrevocable right to sell the same within said time at the price and on the terms as stated above, or at such other price and terms which may be accepted by me and to accept a deposit thereon. In case of any sale or exchange of same within that time, either by the undersigned Owner, the undersigned Agent or listing associates or by any person or of any sale or exchange in the subsequent sixty (60) days to any party to whom said Agent or listing associates introduced the property during the listing period, I hereby agree to pay said Agent and/or listing associates the commission of 10% of total price obtained. It is further agreed that upon the expiration of the exclusive listing period, as above set forth, this listing shall continue in force, as an open listing, at the price and on the terms as stated above until written notification of its termination is transmitted to said Agent. I certify that all statements and information, as set forth above, are correct, to the best of my knowledge."

The trial court found in substance that on February 21, 1962, Arthur M. Ariessohn, a salesman employed by Siegel Realty, Inc., a corporation, "introduced said real property to Joseph D. Feldman and Naomi Feldman." It was further found that on April 24, 1962, the defendant sold the property to Mr. and Mrs. Feldman for $18,000. The court thereupon awarded plaintiffs the sum of $1,800 as commission.

The defendant and appellant presents two questions: first, that the facts established by the evidence and as found by the court do not support the judgment; and, second, that the plaintiffs breached their agreement by failing to advertise the property as required by the listing agreement. It appears that the first proposition is determinative of the case.

It is to be noted that the listing agreement is in form an exclusive right to sell, by the terms of which during the exclusive period the owners are obligated to pay a commission in case of any sale of the property, regardless of the

procuring cause thereof. This sale did not take place during that period but during the 60 days thereafter.

It is the general rule that in order to recover a real estate commission a broker must establish that his efforts constituted the ''procuring cause'' of the sale. (9 Cal.Jur.2d 240.)

'' 'Procuring cause' has been defined as the cause originating a series of events that, without break in their continuity, result in the accomplishment of the prime object of the employment.'' (9 Cal.Jur.2d 242.)

However, is is well established that the parties may by contract provide for the payment of a commission upon any lawful condition. The rule is stated in *Kimmell* v. *Skelly*, 130 Cal. 555, at page 559 [62 P. 1067]: ''The parties to a brokers' contract are at liberty to make the compensation of the broker depend upon any lawful conditions they see fit to place therein. The single question is, What does the contract provide?''

This rule has been followed by many California cases. Pursuant thereto it has been held that where the parties by their agreement determine that the commission is payable upon the happening of certain lawful conditions, it becomes unnecessary to establish that the acts of the broker constituted the ''procuring cause'' of the sale. (*Delbon* v. *Brazil*, 134 Cal. App.2d 461 [285 P.2d 710]; *Leonard* v. *Fallas*, 51 Cal.2d 649 [335 P.2d 665].)

In order to determine whether plaintiffs were entitled to a commission, it becomes necessary, therefore, to determine the proper construction of the listing agreement. It is to be noted that the agreement provides for the payment of a commission if a sale is made within 60 days after the expiration of the exclusive period ''to any party to whom said Agent or listing associates introduced the property during the listing period.'' This unusual provision does not appear to have been passed upon by the courts of this state. There have been somewhat similar exclusive contracts providing for the payment of commission in case of a sale to a party or prospect introduced *to the owner* by the broker or salesman during the exclusive period, but what constitutes the act of introducing the property to a person requires construction. It is to be noted that the exclusive right to sell is granted to ''said Agent and/or listing associates.'' The term ''listing associates'' means members of the realty association of which plaintiffs were members. It then provides that in case of a sale by either the agent or a listing associate or any

person, or by the owner himself, during the 60-day period, or in case the agent or listing associates introduced the property during said period and a sale is made within 60 days after the expiration of that period, then ''I hereby agree to pay said Agent and/or listing associates the commission of 10% of total price obtained.''

We have, therefore, language by which the owner may become liable to pay a commission either (1) to the agent, or (2) to the agent and listing associates, or (3) to the listing associates. This fact becomes of considerable importance in determining what is meant by the use of the word ''introduced.'' It is apparent that the parties contemplate that there may be some circumstances under which the owner becomes liable to pay a commission to the broker. It also is apparent that the parties contemplate that there may be circumstances or conditions under which a commission is payable to a listing associate. The court is bound to construe a contract in such manner that it will be reasonable, if that is possible. It becomes apparent, therefore, that the act of the salesman or broker by which he ''introduced'' the property to the prospective purchaser must have had at least some connection with the sale ultimately consummated. The language of the court in *Wright & Kimbrough* v. *Dewees*, 52 Cal.App. 42, 46 [197 P. 957], wherein the court construed a contract containing somewhat similar terms, is appropriate: ''This language imports an obligation on the part of the broker, to entitle him to commissions, to do something more than merely show the property and make unsuccessful efforts wholly unconnected with and to no extent traceable to the subsequent sale.''

It is true that by this contract the parties have clearly indicated that a commission may be required even though the broker is not the ''procuring cause'' of the ultimate sale, but nevertheless it is clear that in order to make out a reasonable construction of the contract there must have been at least some connection between the act and the sale. It follows, therefore, that as to a sale made within the exclusive term the commission may be payable to the agent or to the listing associate, dependent upon which one performed some act which had something material to do with the sale. Likewise, as to a sale in the 60-day period after the exclusive period, a determination as to whom a commission is to be paid, if at all, is dependent upon who did some act by way of introducing the property that had some causal connection with the

ultimate sale. We are unable to find any other construction that would be reasonable.

■ In the instant case it is not alleged nor proven nor found that the plaintiffs or any of their employees or salesmen had anything whatever to do with producing the ultimate sale. Mr. Ariessohn was not an employee. The evidence is that while Mr. Ariessohn was showing to Dr. and Mrs. Feldman various houses he incidentally showed them some vacant lots, among which was the lot owned by the defendant. He did nothing further to bring about a sale; he did not report the fact of showing the lot to his employer, to the plaintiffs or to the property owners. The testimony of the Feldmans was to the effect that they did not remember having been shown the lot by Mr. Ariessohn. The actual sale took place more than 60 days after the property was shown to them. In short, the evidence shows that the act of Mr. Ariessohn in calling the attention of the Feldmans to the lot had nothing to do with the ultimate purchase.

Under the terms of the contract, if there was any liability to pay a commission it would be to Siegel Realty, Inc., or to Mr. Ariessohn in case the acts of Mr. Ariessohn had had anything to do with the sale, but in any event the record is clear to the effect that the plaintiffs had nothing whatever to do with it. Under the circumstances the defendant is entitled to judgment.

The judgement is reversed and the cause is remanded to the trial court with directions to enter judgment in favor of the defendant.