[S. F. No. 7692. In Bank.—June 22, 1920.]

## M. BOEHM et al., Appellants, v. JOHN D. SPRECKELS, Respondent.

[1] NEWSPAPER ROUTES—NATURE OF RIGHTS—QUESTION OF LAW.—The question whether the rights relating to newspaper routes constitute property which is a subject of sale is a question of law that is to be determined by the principles of law, and not by the opinions or customs of persons who deal with such matters.

[2] ID.—NATURE OF CONTRACT—AGENCY.—A contract between the owner of a newspaper and a carrier reciting that the former has transferred and delivered to the latter a certain route for the delivery of such newspaper and providing that the former will

daily deliver to the latter a sufficient number of issues to supply the route, for which the latter will pay a certain rate per week, creates an agency, and does not declare a sale of property.

[3] PRINCIPAL AND AGENT—AGENCY TERMINABLE AT WILL—RIGHT OF SALE.—In a qualified sense an agent may sell or transfer his right to an agency terminable at will, but he cannot transfer to the purchaser anything more than the opportunity to offer himself to the principal as a substitute for the transferrer.

[4] ID.—INTEREST OF AGENT IN COLLECTION OF DEBT OF PRINCIPAL—NATURE OF.—The interest which an agent authorized to collect a debt may have in the money collected, a part of which he is to take as compensation for his services, is an interest in that which is to be produced by the exercise of his power, and not an interest in "the subject of the agency," within the meaning of section 2356 of the Civil Code.

[5] ID.—SALE OF SUBJECT OF AGENCY—REVOCATION.—A sale of the subject of the agency made in good faith by the principal operates as a termination of the agency, and is equivalent to a revocation thereof.

[6] ID.—REVOCATION—RIGHT TO DAMAGES.—An agent cannot recover damages from the principal on account of a termination of an agency for an indefinite period for any of the causes mentioned in section 2355 of the Civil Code, except where the agency was procured for a valuable consideration passing from the agent to the principal and the revocation is prior to the expiration of a reasonable time after its creation.

[7] ID.—AGENCY COUPLED WITH AN INTEREST—REVOCATION—DAMAGES.—Except where the agent's power is coupled with an interest, the power to revoke always exists, but the right to revoke without liability for damages depends upon circumstances.

[8] ID.—REVOCATION OF NEWSPAPER ROUTE AGENCY—NONLIABILITY FOR DAMAGES.—In an action by a newspaper carrier to recover damages for breach of his route contract for which he paid $3,250, and which provided no specified time for its continuance, it cannot be said that ten years was not a reasonable time for its continuance and that its revocation at the end of that period would give the carrier the right to recover the original sum paid for the agency, in the absence of any showing of special hardship or of further facts indicating that a longer period was contemplated or expected.

[9] ID.—BENEFITS TO BUSINESS OF PRINCIPAL—RIGHTS OF AGENT.—The benefits to the business of the principal, arising from the performance by the agent of his duties under the contract of agency, inure entirely to the principal, and the agent is entitled to nothing except the agreed compensation, unless the contract expressly provides for something more.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon, Kingsley Cannon, Fabius T. Finch, Paul F. Fratessa and George B. Keane for Appellants.

Samuel M. Shortridge for Respondent.

SHAW, J.—In the court below a demurrer to the complaint was sustained and judgment was thereupon given for the defendant.   The plaintiffs appeal.

The plaintiffs are the assignees of all the rights of one James Shepherd to recover damages under a contract made between Shepherd and Spreckels on September 1, 1903. Spreckels was at that time the owner of the "San Francisco Call," a morning newspaper of general circulation in San Francisco, which had been published and circulated therein for more than forty years prior to said date.   For the more convenient transaction of the business the city of San Francisco had been divided into districts, in each of which the newspapers taken by patrons thereof were delivered to such patrons by carriers who received the papers from the publisher and delivered the same to such patrons.   These districts were commonly known as "newspaper routes."   The contract between Spreckels and Shepherd related to one of these routes.   Spreckels was the party of the first part and Shepherd the party of the second part therein.   Substituting their names for these phrases, the material parts of the agreement are as follows:

"That for and in consideration of the sum of $3,250.00 gold coin of the United States in hand paid to said Spreckels, the receipt whereof is hereby acknowledged, and of the further conditions and covenants named in this agreement, said Spreckels has transferred and delivered and by these presents does transfer and deliver to said Shepherd, that certain route for the delivery of said newspaper The San Francisco Call lying and being in said city, county and state aforesaid, and more particularly described as follows, to wit:

CLXXXIII—16

"Route No. 4 of the San Francisco Call, embracing the following territory: Commencing at the southeasterly corner of Sixteenth and Howard streets, thence southerly along the easterly line of Howard street to the corner of Twenty-fourth street, thence easterly along the northerly line of Twenty-fourth street to Potrero avenue, thence northerly along the westerly line of Potrero avenue to Channel street, thence westerly along the southerly line of Channel street to Harrison street, thence southerly along the easterly line of Harrison street to Sixteenth street, thence westerly along the southerly line of Sixteenth street to point of commencement.

"Spreckels agrees to deliver to Shepherd daily, a sufficient number of issues of said newspaper to supply said newspaper route, and said Shepherd agrees to receive the same and to pay said Spreckels therefor at the rate of 10-11/13 cents per paper per week, said payments to be made weekly and upon Saturday of each and every week during the existence of this agreement.

"It is expressly understood and agreed that said Shepherd shall manage, conduct and control said newspaper route above described in such manner and with such efficiency as shall be for the best interests of said The San Francisco Call newspaper, and shall maintain and preserve the extent and value of said newspaper route to the satisfaction of said Spreckels, and said Spreckels hereby reserves the right to make such changes in the rate to be paid for the newspapers delivered Shepherd under this contract, as changed conditions in said route and the service thereof or in the cost of production of said newspaper shall render reasonable and just, and further reserves the right to give his written consent before any legal transfer of this contract shall be made.

"It is distinctly understood and made a part of this agreement that this bill of sale shall not be hypothecated or loans negotiated thereon where loans may be raised on said route without the full knowledge and sanction of said San Francisco Call, John D. Spreckels, proprietor."

Attached thereto as a part thereof was the following:

"It is hereby agreed and understood by and between Spreckels, proprietor, and James Shepherd, owner and holder of that certain newspaper route on the San Francisco Call

known as Route number 4, as described in the attached bill of sale, of which this agreement is made a part;

"That whereas the subscription price of said newspaper has been increased from 65 cents to 75 cents per month from and after July 1st, 1903.

"Now, therefore, in consideration of the premises, and of said increase of 10 cents per month in said subscription price, it is understood and agreed that of said increase of 10 cents per month in the subscription price said James Shepherd shall receive 2 cents per calendar month and the Call shall receive 8 cents per calendar month, in addition to the amount received by each of them respectively previous to said increase. That the said San Francisco Call may at any time increase its subscription price, or reduce the same back to 65 cents per month, to suit existing conditions as the judgment of said newspaper management shall deem reasonable, and said rate to James Shepherd will be increased or decreased in proportion to the increase indicated herein."

The complaint further alleges that at the time the contract was made, and ever since, it was, and has been, a custom and usage of publishers of newspapers in San Francisco, including the defendant, to treat and deal with newspaper routes, the lists of subscribers thereon, and the exclusive right to sell and deliver newspapers and procure new subscribers upon said routes and the goodwill of the business thus carried on over such routes, as property, and to make sales and transfers thereof accordingly. That the defendant, during all the period of his ownership of said newspaper, had known and acted upon said custom and usage and that he and Shepherd executed the aforesaid contract with knowledge of said custom and in pursuance thereof; that Shepherd continued to perform his part of said contract, until September 1, 1913, and by his efforts had secured large numbers of new subscribers to the paper, whereby the value of the business was materially increased and at that time was of the value of four thousand dollars; that it had returned to him a net annual profit of $227.50, and he would have continued to have received that profit for the period of at least fourteen years succeeding said date if the defendant had continued to perform his part of the said agreement; that on August 15, 1913, defendant, intending

to take said newspaper route from said Shepherd and deprive him of the same and all benefits and advantages of the business conducted by him under said agreement and to transfer and sell said newspaper route with the business aforesaid to other parties, gave notice to each of the subscribers of said paper upon said route that they would be served with the "San Francisco Chronicle" instead of the "Call" until September 1, 1913, and that thereafter the "San Francisco Chronicle" would be delivered to them daily instead of the "San Francisco Call"; that on September 1, 1913, defendant refused, and ever since has refused, to deliver to Shepherd any copies of said "San Francisco Call," although delivery thereof was demanded of defendant by said plaintiff, and defendant has repudiated said agreement, and that by reason thereof the business of the defendant in selling and distributing said newspaper upon said route has been destroyed, to the damage of the plaintiff in the sum of $7,185. In said item of damages is contained the sum of $3,185, alleged to be the value of the profits which the plaintiff would have received after September 1, 1913, if the defendant had continued to deliver the said newspapers as provided in the contract.

[1] The allegation that it was the custom and usage of the publishers in San Francisco to treat and deal with such routes and the business connected therewith as property adds nothing to the case of the plaintiff. It amounts to nothing more than a statement that it was the opinion of such publishers that rights concerning said newspaper routes constituted property. The question whether the rights relating thereto constitute property which is a subject of sale is a question of law that is to be determined by the principles of law and not by the opinions or customs of persons who deal with such matters.

The plaintiffs contend that the agreement aforesaid operated as a grant to Shepherd of that portion of the business of Spreckels which was transacted within the territory included in said route, consisting of the delivery of the paper to the subscribers along said route and making sales of the paper to others within the territory; that this grant included the goodwill of the business, and that it gave Shepherd the absolute right to continue the business and compel Spreckels to perform his part thereof during the life of Spreckels.

They also contend that if the agreement created an agency authorizing Shepherd to sell and deliver papers for Spreckels, it was an agency coupled with an interest in the subject matter thereof, and was therefore irrevocable by Spreckels except for cause. Also that, even if the agency was not coupled with an interest, it was created for a valuable consideration, and therefore was irrevocable at the will of Spreckels, and that inasmuch as it did not specify the time for its continuance, it could not be revoked for a reasonable time, which reasonable time is a period equal to the life of the newspaper, or the life of Spreckels.

The facts stated in the complaint must be considered in construing the contract. At and before the time it was made, Spreckels was the publisher and proprietor of the newspaper. It circulated generally throughout the city, and there were subscribers thereto and patrons thereof living or doing business along said route, to whom it was then being delivered. The contract shows that the subscription price was seventy-five cents per month and that Spreckels had the right to raise or lower this price at will, and could also make reasonable changes in the rate to be paid by Shepherd. The contract is not entirely complete on the subject, but it is reasonably clear from its contents in connection with the facts alleged that, subject to this power to change the price, Shepherd was to pay to Spreckels for each paper received, the sum of ten and eleven-thirteenths cents per week, plus eight cents per month, and that he was to collect from the subscribers seventy-five cents per month and keep the difference for his own compensation. Spreckels does not agree to sell the papers to Shepherd. The fact would appear to be that the papers were sold by Spreckels to the subscribers. That was the condition when the contract was made, and there is nothing in the contract to indicate that it was to effect a change in the relations between the publisher and the subscribers. The agreement of Spreckels is that he will "deliver" to Shepherd "a sufficient number of issues of said newspaper to supply said route." In view of the fact that Spreckels had already agreed to sell and deliver the papers to the subscribers, this language cannot reasonably be construed to import a sale of the same copies to Shepherd.

If Spreckels had sold an interest in his business as publisher of the newspaper, the two would have become partners. If a separable part of that business, assuming that a separation was possible, had been sold, they would have been partners in the ownership of that part. In either case the ownership of the respective interests would have continued after a dissolution of the partnership, each would have been entitled to his share of the profits, and would be liable to the other for a share of losses, and would be liable for the debts of the joint enterprise. The contract manifestly had no such effect. The statement that Spreckels does "transfer and deliver" to Shepherd "that certain route for the delivery of said newspaper" therein described cannot reasonably be understood to be a transfer to Shepherd of any interest in the business of publishing the newspaper. The more reasonable conclusion, in view of all the facts, is that it is only a rather awkward expression of the idea that Shepherd was to have the right and duty, as agent of Spreckels, of delivering the papers, soliciting and taking new subscriptions thereto, and conducting the business incidental thereto within the territory described, including the collection of the price of the subscriptions owing to Spreckels. The statements that Shepherd was to receive the papers, distribute them within the territory, and "manage, conduct, and control said newspaper route in such manner and with such efficiency as shall be for the best interests" of said newspaper, "and as shall maintain and preserve the extent and value of said newspaper route to the satisfaction of" Spreckels, are apt expressions to describe the duties and powers of an agent. They strongly imply that an agency only was contemplated. They are meaningless as applied to a sale of the business, or a part thereof, to the carrier. [2] For these reasons we conclude that the contract created an agency and did not declare a sale of property. This is the effect of the decisions of other courts upon similar contracts. (*Harlow* v. *Oregonian Pub. Co.,* 45 Or. 525, [78 Pac. 737]; *Harlow* v. *Oregonian Pub. Co.,* 53 Or. 272, [100 Pac. 7]; *Staroske* v. *Pulitzer Pub. Co.,* 235 Mo. 67, [138 S. W. 36]; *Wilcox & Gibbs Co.* v. *Ewing,* 141 U. S. 636, [35 L. Ed. 882, 12 Sup. Ct. Rep. 94, see, also, Rose's U. S. Notes].) So far as the opinion of the district court of appeal in *Otten* v. *Spreckels,* 24 Cal. App. 262,

[141 Pac. 224], contains anything inconsistent with this conclusion, that case is disapproved.

Appellants refer to cases which say that an agent may sell or transfer his right to the agency even where it is terminable at will. [3] In a qualified sense he may do so, but he cannot transfer to the purchaser anything more than the opportunity to offer himself to the principal as a substitute for the transferrer. He buys a mere chance that the principal may accept him in place of the other. No interest in the agency, or in the business which the former agent was authorized to transact for the principal, can be thus sold or transferred. These cases are not authority for the proposition that such an agent has a property interest in the business which he carries on and which is the subject of his agency. Expressions may be found in such decisions indicating that the agent may sell his agency, but they cannot be considered as declaring that he has any interest in the business which may be the subject thereof.

Shepherd had an interest in collecting the subscription price, for upon that his compensation as agent was dependent. [4] But the interest which an agent authorized to collect a debt may have in the money collected, a part of which he is to take as compensation for his services, is an interest in that which is to be produced by the exercise of his power, and not an interest in "the subject of the agency," within the meaning of section 2356. (*Hunt* v. *Rousmanier,* 21 U. S. 204, [5 L. Ed. 589, see, also, Rose's U. S. Notes] ; *Meyer* v. *Pulitzer Pub. Co.,* 156 Mo. App. 176, [136 S. W. 5] ; *Flanagan* v. *Brown,* 70 Cal. 260, [11 Pac. 706] ; *Hartley and Miner's Appeal,* 53 Pa. 212, [91 Am. Dec. 207].) We therefore conclude that the action cannot be maintained on the theory that Shepherd had an interest in the subject of the agency, and that as the first count of the complaint is founded on this theory, it does not state a cause of action.

The second count of the complaint is founded upon the theory that the payment of a valuable consideration by Shepherd implies an agreement that the agency should continue for a reasonable time, and that the revocation by Spreckels occurred before such reasonable time had expired. This count prays only for the recovery of the $3,250 paid for the route by Shepherd to Spreckels, with interest thereon

from the time of revocation. It alleges that seven per cent upon said sum was received by Shepherd annually during the ten-year period; that it was only a reasonable return thereon, and that he had never received or had returned to him any part of the principal. It also repeats the other facts hereinbefore stated.

It is contended that the implied agreement for a reasonable time means that the agency should continue for a period which would ''enable the carrier to get back his invested capital, together with a fair profit on his investment.'' The Civil Code provides that an agency is terminated by: ''1. The expiration of its term; 2. The extinction of its subject; 3. The death of the agent; 4. His renunciation of the agency; or, 5. The incapacity of the agent to act as such.'' (Sec. 2355.) Also, that when not coupled with an interest in the subject of the agency, it is terminated by: ''1. Its revocation by the principal; 2. His death; or, 3. His incapacity to contract.'' **[5]** It is also an established rule that a sale of the subject of the agency made in good faith by the principal operates as a termination of the agency and is equivalent to a revocation thereof. (1 Mechem on Agency, sec. 698.) Everyone is presumed to know the law, and it must therefore be presumed that the parties to the agreement contracted with knowledge of the possibility of a termination of the agency by either of the causes above specified.

**[6]** We know of no rule of law which allows the agent to recover damages from the principal on account of a termination of an agency for an indefinite period for any of the causes above mentioned, except where the agency was procured for a valuable consideration passing from the agent to the principal and the revocation is prior to the expiration of a reasonable time after its creation. In *Frink* v. *Roe*, 70 Cal. 309, [11 Pac. 820], it is said that an agency created for a valuable consideration is irrevocable, but as this is directly contrary to the Civil Code, and as the expression was clearly *obiter*, the case cannot be considered as authority. There is a distinction between the *power* to revoke and the *right* to revoke an agency. **[7]** Except where the agent's power is coupled with an interest, the power to revoke always exists, but the right to revoke without liability for damages depends upon circumstances.

(1 Mechem on Agency, 2d ed., sec. 568.) If the right does not exist, the principal will be liable for damages upon a revocation. In *Brown* v. *National Electric Co. Works,* 168 Cal. 337, [143 Pac. 606], the defendant, for a valuable consideration, agreed to employ the plaintiff at a monthly salary for an indefinite time. The plaintiff was discharged without cause after three months' service. It was held that there was an implied contract, arising from the valuable consideration, to continue the employment for a reasonable time, that the discharge in three months was a breach of the implied contract, and that by reason thereof the plaintiff was entitled to rescind the contract and recover what he had paid thereon. In the present case the paper had been published for more than forty years before the contract was made in 1903. The payment of $3,250 for an agency for an indefinite period raises the inference that both parties considered the privilege valuable and that both assumed that it would be continued for a considerable period of time. The plaintiff contends that under such circumstances the implied agreement is that the agency shall continue until the agent has received, as compensation, a sum sufficient to repay the consideration paid by him to the principal, together with a fair profit thereon during the necessary period, in addition to a reasonable compensation for his own time and labor in performing his duties. We cannot agree to this proposition. It would add to the agreement something not contained therein, and instead of being an agency for an indefinite time, terminable at will, it would become an agency, indefinite, it is true, but one which must necessarily continue for a long time after its creation, the length of the period depending upon the capacity and diligence of the agent and on many other future conditions which might arise affecting his success or failure, none of which could be foreseen. No subsequent condition which affected the ability of the plaintiff to recoup his outlay is alleged. The contention is that the obligation to allow him time to recoup arises solely from the payment of a consideration for the agency. The complaint does not disclose the amount which Shepherd received and applied as compensation for his own time and labor. It must be presumed that the opportunity of obtaining such employment and compensation was one of the main inducements which caused him to enter

into the arrangement. No standard can be fixed for the determination of the question what is a reasonable time. [8] Under all the circumstances of the case, and in the absence of any showing of special hardship or of further facts indicating that a longer period was contemplated or expected, we think it cannot be said that ten years was not a reasonable time for its continuance, and that the revocation at the end of that period would not give a right to Shepherd to recover the original sum paid for the agency.

In support of the proposition that the agency was terminated before a reasonable time had expired, the plaintiff cites the Brown case above mentioned, and also *Pierce* v. *Tennessee etc. Co.*, 173 U. S. 1, [43 L. Ed. 591, 19 Sup. Ct. Rep. 335, see, also, Rose's U. S. Notes]; *Davidson* v. *Laughlin*, 138 Cal. 320, [5 L. R. A. (N. S.) 579, 71 Pac. 345]; *Brown* v. *Crown etc. Co.*, 150 Cal. 385, [89 Pac. 86]; *Harlow* v. *Oregonian Pub. Co.*, 53 Or. 272, [100 Pac. 7], and *Meyer* v. *Pulitzer Pub. Co.*, 156 Mo. App. 177, [136 S. W. 5]. We have already stated the effect of *Brown* v. *National Elec. Co. Works, supra*. In *Pierce* v. *Tennessee etc. Co.*, the decision was put upon the ground that the contract was that the employment was to continue as long as the employee was able to do the kind of work specified. It has no bearing upon the question of a reasonable time. Neither *Davidson* v. *Laughlin* nor *Brown* v. *Crown etc. Co.*, touch upon the question. In *Meyer* v. *Pulitzer Pub. Co.* the carrier had paid $45.46 for his agency and had enjoyed it for more than eleven years. The court said that if it appeared that the agent, induced by his appointment, had in good faith incurred expense, devoted time, and bestowed labor in the matter of the agency without having had a sufficient opportunity to recoup the same from the agency, the principal would be required to compensate him to that extent, but that the law required no more than that "in every instance the agent shall be afforded a reasonable opportunity to avail himself of the preliminary expenditure and efforts put forth to the end of executing the authority conferred." The conclusion was that the plaintiff in that case had had ample time for that purpose, and he was denied a recovery. The main reliance of the plaintiff is upon the case of *Harlow* v. *Oregonian Pub. Co.* This case is somewhat remarkable, both in its facts and

in the law declared thereon. The agency in that case was created in the year 1864 for the delivery of the "Daily Oregonian" in a certain part of the city of Portland. The consideration paid by the agent was $350. It continued for forty-eight years and was then terminated by a revocation. In the meantime the population of the city had greatly increased and the value of the privilege was declared to have increased more than five thousand dollars. The decision did not go upon the theory that the valuable consideration implied an agreement that the agency should continue for a reasonable time, but upon the meaning of the contract creating the agency. The court construed it to provide that no matter how long the agency might continue, a just and equitable allowance was to be made to the agent for the value of the privilege at the time of its revocation. A jury had allowed him five thousand dollars for his loss caused by the revocation of the agency and this allowance was upheld, although the contract was construed to create a mere agency not coupled with any interest in the subject thereof. In other words, the decision, aside from what we deem a strained construction of the contract itself, appears to go upon the idea that where an agent is employed to assist in the business of the principal and receives from time to time the compensation agreed upon between them, he nevertheless becomes entitled to the value which his efforts add to the business of his principal, in case the agency is terminated by the principal without the fault of the agent. [9] It appears to us that the correct rule is that the benefits to the business of the principal, arising from the performance by the agent of his duties under the contract of agency, inure entirely to the principal, and that the agent is entitled to nothing except the agreed compensation, unless the contract expressly provides for something more. The contract there involved contained no such covenant, and we think none could be implied from its terms. Neither this nor any of the other cases cited sustain the contention of the plaintiff. The demurrer to the complaint was properly sustained.

The judgment is affirmed.

Olney, J., Wilbur, J., and Lawlor, J., concurred.

ANGELLOTTI C. J., dissenting.—In all respects except one I concur in the opinion. It is conceded that because of the payment of a valuable consideration there was an implied agreement that the agency should be allowed to continue for what under all the circumstances would be a ''reasonable time,'' and with this view I am in accord. I have no doubt that if the agency here was allowed to continue through the life of the newspaper, it should be held that it had been allowed to continue for such time as was contemplated, with the result that no recovery could be had by plaintiff. But the *complaint* does not show that such was the fact, and we are here dealing only with the question of the sufficiency of the complaint. Assuming that the publication of the newspaper continued, it seems to me that the complaint sufficiently alleges matters showing that the agency was terminated prior to the expiration of the ''reasonable time'' for which it was given. I dissent from the judgment solely for this reason.

Rehearing denied, a majority of the Justices not having assented to the granting of a rehearing.