[Civ. No. 6587. First Appellate District, Division Two.—March 29, 1929.]

SAN FRANCISCO REALTY CO. (a Corporation), Plaintiff and Appellant, v. D. M. LINNARD, Defendant and Appellant.

34

James F. Peck and Robert L. McWilliams for Plaintiff and Appellant.

Harold M. Sawyer, Alfred T. Cluff, William O'Brien and J. W. Evans for Defendant and Appellant.

GRAY, J., *pro tem.*—D. M. Linnard (hereinafter referred to as the defendant), while he was lessee of the Fairmont Hotel, and San Francisco Realty Co., a corporation (hereinafter referred to as the plaintiff), entered into a written contract wherein and whereby, in consideration of plaintiff's promise to write specified insurance on terms admittedly favorable to defendant, the latter appointed the former and the former accepted such appointment as "*his sole and exclusive agent or broker for the placing of all insurance*

*now carried or to be hereafter carried by him in connection with the ownership, occupation and maintenance of the Fairmont Hotel,"* for the term of five years and upon express terms fixing the amount of the premiums to be charged for such insurance. Approximately seven months after the execution of this agreement the owner of the hotel conveyed the hotel to the defendant, who forthwith conveyed it to the Fairmont Hotel Company, a corporation, which in turn conveyed the legal title to a trustee under a deed of trust securing a bond issue. At the same time the defendant surrendered his lease. After the execution of the agreement but prior to the above transfers of title to the hotel defendant ordered certain insurance on the hotel which plaintiff procured, its commissions thereon amounting to $398.20. After the said transfers of title defendant advised plaintiff that he no longer had an insurable interest in the hotel and thereafter no insurance was ordered or carried by him upon the hotel. In this action plaintiff seeks to recover (1) said sum of $398.20 and (2) damages for defendant's failure to place insurance on the hotel during the balance of the term of five years. Judgment was rendered in favor of plaintiff for the sum of $398.20. Each party appealed, the plaintiff claiming that it was also entitled to the second item of damages and defendant claiming that plaintiff was not entitled to the first item. While, by stipulation, the appeals were consolidated, each will be considered separately in inverse order, as the legal propositions involved are distinct although based upon the same contract.

In discussing the effect, upon a contract of agency for the distribution of a newspaper over a designated route, of the sale of such newspaper, the supreme court, in *Boehm v. Spreckels*, 183 Cal. 239, 248 [191 Pac. 5, 9], enunciated the following rules here applicable:

"The Civil Code provides that an agency is terminated by '(1) the expiration of its term; (2) the expiration of its subject; (3) the death of the agent; (4) his renunciation of the agency, or (5) the incapacity of the agent to act as such.' (Sec. 2355.) Also, that when not coupled with an interest in the subject of the agency, it is terminated by '(1) its revocation by the principal; (2) his death, or (3) his incapacity to contract.'

"It is also an established rule that a sale of the subject of the agency made in good faith by the principal operates as a termination of the agency and is equivalent to a revocation thereof. (1 Mechem on Agency, sec. 698.) Everyone is presumed to know the law, and it must therefore be presumed that the parties to the agreement contracted with knowledge of the possibility of a termination of the agency by either of the causes above specified.

"We know of no rule of law which allows the agent to recover damages from the principal on account of a termination of an agency for an indefinite period for any of the causes above mentioned, except where the agency was procured for a valuable consideration passing from the agent to the principal and the revocation is prior to the expiration of a reasonable time after its creation. In *Frink* v. *Roe*, 70 Cal. 309 [11 Pac. 820], it is said that an agency created for a valuable consideration is irrevocable, but as this is directly contrary to the Civil Code, and as the expression was clearly *obiter*, the case cannot be considered as authority. There is a distinction between the power to revoke and the right to revoke an agency.

"Except where the agent's power is coupled with an interest, the power to revoke always exists, but the right to revoke without liability for damages depends upon circumstances. (1 Mechem on Agency, 2d ed., sec. 568.) If the right does not exist the principal will be liable for damages upon a revocation."

Again, in *Roth* v. *Moeller*, 185 Cal. 415, 418 [197 Pac. 62, 63], the same rules were thus expressed: "Save in the case of an agency coupled with an interest, a principal has the power to revoke an agent's authority at any time before the agent has completed performance. (Civ. Code, sec. 2356; *Flanagan* v. *Brown*, 70 Cal. 254 [11 Pac. 706]; *Parke* v. *Frank*, 75 Cal. 364 [17 Pac. 427]; *Blumenthal* v. *Goodall*, 89 Cal. 251 [26 Pac. 906]; 1 Cal. Jur., p. 705.) A principal may, however, curtail his right of revocation by contracting not to revoke the authority for a definite time. If the principal does so contract, he still retains the power to terminate the agency and the termination cannot be prevented by the agent, but a revocation of authority within the designated period renders the principal liable for damages for the violation of a legal right of the agent, just as

in the case of any other breach of contract. (*Parke* v. *Frank, supra; Blumenthal* v. *Goodall, supra; Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671 [79 Pac. 354]; *Sill* v. *Ceschi,* 167 Cal. 698 [140 Pac. 949]; *Boehm* v. *Spreckels,* 183 Cal. 239 [191 Pac. 5].)"

Since plaintiff had no interest in the subject matter of the contract, i. e., the insurance to be procured, its power under the contract was not coupled with an interest (*Todd* v. *Superior Court,* 181 Cal. 406 [7 A. L. R. 938, 184 Pac. 684]; *M. V. B. MacAdam Co., Inc.,* v. *Bryant,* 86 Cal. App. 74 [260 Pac. 298]). But as the contract provided for its continuance for a definite term of five years and was supported by a consideration in the favorable rates upon the specified insurance, defendant, while he had the power to revoke the contract of agency by his surrender of his lease, had curtailed his right of revocation and is liable for damages for the violation of any legal right of the plaintiff.

It next becomes necessary to determine what plaintiff's rights and defendant's obligations were under the contract so as to ascertain whether defendant's revocation violated any rights and obligations. In determining the effect of a sale of a lumber business upon a contract, based upon a valuable consideration, to employ a truck "for lumber hauling for a period of one year—as our business warrants" the court in *Langenberg* v. *Guy,* 77 Cal. App. 664, 667, [247 Pac. 621, 622], used the following language here pertinent: "There is no basis for a contention that appellant has violated any express term of his contract. In no part of the instrument signed by him does he expressly covenant not to sell his business. Therefore, whether he could rightfully sell it during the year without breaching his contract with respondent depends entirely upon whether the contract imports an implied obligation on appellant's part not to sell the business prior to the year's expiration. That, in the last analysis, is the ultimate question presented for solution. If the contract does import such an implied undertaking on appellant's part, then upon selling the business before the end of the year he would become liable as for a breach of his agreement. For of course it must be conceded that where a party to a contract of employment obligates himself by either an express or an implied agree-

ment not to disable himself from continuing the employment for a stipulated time, he will make himself liable in damages for breach of contract if, by a sale of his business before the expiration of the stipulated period, he voluntarily puts it out of his power to continue the employment to the end of its term in the manner agreed by him. (*White* v. *Lumiere North American Co.*, 79 Vt. 206 [64 Atl. 1121], and notes to that case in 6 L. R. A. (N. S.), p. 807 et seq.) It may also be conceded that, in the absence of some provision in a contract of employment which tends to negative the implication that the employment will continue uninterruptedly during a specified term, one who has bound himself to employ another during a definite time for a compensation, the amount whereof can be earned and determined only by an actual performance of the services over the whole of the stipulated period, will render himself liable for damages for breach of contract if he makes a disposition of his affairs which renders it impossible for him to receive the services in the manner contemplated by the contract. (Note to *Turner* v. *Sawdon & Co.*, 2 B. R. C. 774.) In every such case the question in the last analysis is simply this: Do the terms of the contract—and, if the contract is ambiguous, do the circumstances under which it was made—necessitate the implication that the employer has undertaken not to dispose of his business during a fixed period of time?''

■ Since there is no express agreement that defendant would not surrender the lease, such agreement, if any, must be implied. The court found the surrender of the lease and the transfers of title were in the ordinary course of business and without any intent to avoid liability, under the contract. Furthermore, there is no ambiguity in the contract, apparent or claimed by either party. Our determination of the question here involved must be wholly recited by an interpretation of the terms of the contract. The only portion of the contract here material is the italicized quotation therefrom set forth in the first paragraph of this opinion. The word ''carry'' as applied to insurance means ''possess'' or ''hold.'' (*Dimick* v. *Metropolitan Life Ins. Co.*, 69 N. J. L. 384 [62 L. R. A. 774, 55 Atl. 291].)

The phrase ''by him'' (the defendant) following the phrase ''to be carried'' grants to defendant an option as to whether insurance was or was not to be carried or held or

possessed. The next phrase "in connection with the ownership, occupation and maintenance of the Fairmont Hotel" is a further limitation on the insurance to be carried by confining it as to both purpose and time. It furthermore, by such limitation, shows that the parties intended that insurance was only to be placed while defendant was connected with the ownership, occupation and maintenance of the hotel and that the parties contemplated a possible change in defendant's relation with the hotel which might terminate his desire for insurance. This phrase negatives any implication of any agreement by defendant that he would continue such connection. ■ Defendant did not bind himself to order any particular amount of insurance nor did he agree that the amount thereof should be fixed by the requirements of the hotel or the business conducted there, but expressly agreed that the amount thereof should be fixed by amount he was to hold or possess in connection with the ownership, occupation and maintenance of the hotel. The defendant was the sole judge of the amount of insurance to be carried and might, if he so desired, carry none. Therefore plaintiff was no worse off, as to the amount of insurance to be placed, after the surrender of the lease than it was before. Of course, if the contract provided that the amount was to be determined by the requirements of the hotel, as plaintiff argues, the obligation that defendant would not surrender his lease, might well be implied (for discussion of broker's rights under such requirement contracts see cases listed in *I. Tanenbaum Son & Co.* v. *Rothenberg,* 201 App. Div. 272 [194 N. Y. Supp. 315, 319]). Parenthetically we might add that most of the cases cited in the briefs of the respective parties are discussed in *Langenberg* v. *Guy, supra.* We are satisfied, therefore, that the trial judge correctly determined that defendant's surrender of the lease did not violate any right of the plaintiff under the contract.

■ Passing now to a consideration of defendant's appeal from that portion of the judgment which awards plaintiff the sum of $398.20, we find ourselves confronted solely with a question of fact. Briefly, the complaint alleges that defendant ordered insurance in the specified amount; that plaintiff procured such insurance; that its commission on the premiums amounted to $398.20, and that defendant failed

to pay such premiums. The answer merely denies that he ordered it on his own behalf but admits he did so on behalf of Fairmont Hotel Company and the former owner, and further denies the amount of commission. The court found that defendant refused to pay the premiums. Defendant, in his briefs, claims that he canceled the insurance and that he ordered the insurance for a shorter period than that specified in policies delivered. His answer did not raise any question of cancellation and admitted the ordering of the insurance for the period as claimed by plaintiff. The only testimony upon the subject—that given by the vice-president of plaintiff—amply supports the findings. A letter of defendant admitted in evidence does deny ordering the insurance in the form procured but this, at best, merely raised a conflict upon which the findings are decisive. The letter does not warrant any construction that it canceled the policies. Therefore, since there was no issue or evidence as to any cancellation the trial court was not required to pass upon what defendant's rights might have been if he had canceled the policies.

The judgment is affirmed.

Koford, P. J., and Nourse, J., concurred.