[No. 24056. Department Two. April 10, 1933.]

SEATTLE TIMES COMPANY, *Respondent and Cross-appellant,* v. J. C. MURPHY *et al., Appellants.*[1]

*Grant A. Dentler,* for appellants.

*Todd, Holman & Sprague, Clarence R. Innis,* and *Lucien F. Marion,* for respondent and cross-appellant.

MAIN, J.—The plaintiff, as the owner and publisher of the Seattle Daily and Sunday Times, brought this action to recover the sum of $747.80, which it alleged to be due from the defendants for newspapers which had been furnished to them for sale and distribution. The answer of the defendants did not deny the claim of the plaintiff, but separately pleaded three counterclaims, which were, in effect, cross-complaints. The cause was tried to the court and a jury. The court directed a verdict for the plaintiff in the sum above mentioned, and for the defendants upon its third counter-

[1]Reported in 20 P. (2d) 858.

claim in the sum of $67.50. The jury returned a verdict in favor of the plaintiff upon the first counterclaim, and in favor of the defendants in the sum of $500 on the second counterclaim.

The defendants moved for a new trial, and the plaintiff moved for judgment notwithstanding the verdict; both of which motions were overruled. Judgment was entered in favor of the plaintiff in the sum of $216.55, which is the difference between the sum demanded by the plaintiff and the $67.50 and $500 awarded to the defendants by the directed verdict and the verdict of the jury. The defendants appealed from the judgment in so far as it was adverse to them, and the plaintiff appealed from the judgment in so far as it was adverse to it. Since both parties have appealed, they will be referred to as plaintiff and defendant.

The defendant J. C. Murphy, who will be referred to as though he were the only party on that side of the controversy, was for many years a wholesale dealer in magazines and newspapers in the city of Tacoma. The plaintiff, Seattle Times Company, a corporation, and its predecessors, were for many years the owners and publishers of the Seattle Daily and Sunday Times. We shall refer to the predecessors of the Seattle Times Company as plaintiff in the interest of convenience of expression, while it is not strictly accurate to do so.

For several years prior to November 1, 1905, one W. W. Wingard was the agent in the city of Tacoma for the sale and distribution of the Seattle Daily and Sunday Times in that city. The contract contained no specifications as to its duration. On the date mentioned, Wingard, with the approval of the plaintiff, sold the agency to the defendant. Thereafter and until November 1, 1929, the defendant acted as the agent of the plaintiff for the sale and distribution of its

newspapers in the city of Tacoma and adjacent localities.

Sometime during the month of October, 1929, the circulating manager of the plaintiff informed the defendant that a change in the mode of distribution of the papers in Tacoma was being considered, and that the plaintiff might take over and establish a branch office there itself. October 10th, the circulating manager of the plaintiff wrote a letter to the defendant in which he was advised that his agency would terminate on October 31, 1929, and that the new agency or office would commence delivery on the following day. October 15th, one J. A. Grant, an employe of the plaintiff, went to Tacoma and delivered to the defendant a letter written to him by the circulating manager of the plaintiff. In this letter, the defendant was informed that Grant had been assigned the duty in connection with the transfer of the agency to the new dealer, and that he was calling to obtain the records pertaining to ''news stands, street boys, and residence sales boys to whom you have been serving the Times.'' As to what took place at this time, the evidence is in direct dispute; the defendant and his son testifying that the records mentioned were turned over to Grant, and this the latter unequivocally denies. Subsequently, the present action was begun, and resulted as above indicated.

The first question upon the defendant's appeal is whether the plaintiff's evidence in defense to the first counterclaim was sufficient to make an issue for the jury. In support of this counterclaim, the defendant testified that, commencing January 1, 1921, and ending November 1, 1929, he had been employed to do certain transfer work by the circulating manager of the plaintiff. The defendant says that, under this oral contract, the plaintiff would deliver its papers, wrapped in bundles, at some designated place in the city of Ta-

coma; that the defendant would get these bundles and transfer them, or see that they were transferred, to their proper destination, either within or without the city. For this work, the defendant claimed $2,508.

One of the plaintiff's defenses to this cross-demand was that of payment. Whether the defendant had been fully paid for the work he had done, which was the basis of this claim, the testimony, as stated, is in direct dispute, and presented a question of fact for the jury. Without going further into detail, it may be said that the evidence offered by the plaintiff was ample to support the verdict of the jury that there was nothing due the defendant on this counterclaim.

Some other questions are presented upon the defendant's appeal, which are not material under the view that we take of one or two questions upon the plaintiff's cross-appeal. It may be said, in passing, that the objections of the defendant to the instructions of the court have been considered, and we do not find in any of them substantial merit. The verdict of the jury upon the first counterclaim will not be disturbed.

We shall now take up the plaintiff's cross-appeal where it is contended that the $500 verdict cannot be sustained because there was not sufficient evidence of a contract between the parties by which the plaintiff was to pay for the records and lists, above mentioned; and that, if there is sufficient evidence of such a contract, there is not evidence to take the question to the jury as to the value of such records and lists. Assuming that there was sufficient evidence of the contract, inquiry will be directed as to whether the proof was fatally defective as to the value.

The contract of agency, under which the defendant had operated, contained no provision as to length of time that it should continue, and was therefore subject to termination by either party at will. In

fact, the defendant, as stated in his reply brief, "conceded that right." The contract being subject to termination at the will of either party, the defendant, the agent, had no claim or demand against the plaintiff, the principal, for the loss of the business or goodwill thereof. *Meyer v. Pulitzer Publishing Co.*, 156 Mo. App. 170, 136 S. W. 5; *Boehm v. Spreckels*, 183 Cal. 239, 191 Pac. 5. In fact, that rule is so well settled as to hardly call for the citation of authorities in its support.

■ Conceding for present purposes, as indicated, that there was a contract by which the plaintiff was to pay for the records and lists which the defendant claims were turned over, and which the representative of the plaintiff denies, we come to the question as to whether the evidence as to the value of such lists was sufficient to take that question to the jury. Upon direct examination, the defendant testified:

"Q. State what you consider this business worth, this list you sold and delivered to Mr. Grant? Mr. Innis: May I ask if we are inquiring as to what he thinks as to the bare list and record? Mr. Dentler: And the good will of the business. . . . Mr. Innis: I renew my objection. The Court: I think he may state what he thinks the business is worth; that is the business and the list. Exception allowed. A. It was reasonably worth twenty thousand dollars. Mr. Innis: I now move to strike the answer. The Court: Motion denied; exception allowed."

On cross-examination, the defendant testified:

"Q. Now you testified over my objection this morning as to the value of your business? A. Yes, sir. Q. And I understand you were talking about the value of your agency for the Times? A. Yes, sir. Q. And that is all you were talking about? A. Yes."

On further cross-examination, the defendant testified:

"Q. Now suppose you had an agency for a newspaper similar to the one you had for the Seattle Times, and suppose that that agency could be terminated by the newspaper at any time it saw fit, and on the other hand you could quit at any time you wanted to; would that fact affect the value of the agency? A. Yes, it would. Q. And then suppose that in your case your agency was terminable at will and the Seattle Times did terminate it, then your lists and records would not be worth anything, would they? A. They certainly would. Q. Nothing like the value you are talking about this morning? A. I don't know about that."

The defendant does not claim that there is any testimony upon the question other than as here set out, but says that it "is sufficient to sustain the verdict." In the testimony, as set out, we see nothing that would enable the jury to determine the value of the records and lists separate and apart from the value of the business or the good-will. It is plain that the answer of the defendant that "it was reasonably worth twenty thousand dollars" referred to the good-will of the business as well as to the lists. There being no evidence from which the jury could find the value of the records and lists, the verdict cannot be sustained. *Northwestern Equipment Co. v. Sofe,* 91 Wash. 118, 157 Pac. 459. The plaintiff was entitled to a judgment for the sum of $747.80, less $67.50, or $680.30.

From what has been said, it follows that the judgment will be affirmed upon the defendant's appeal and reversed upon the plaintiff's cross-appeal, with direction to the trial court to dismiss the defendant's second counterclaim and enter a judgment as herein indicated.

BEALS, C. J., STEINERT, BLAKE, and TOLMAN, JJ., concur.