**WILLIAM S. GRAY & CO. v. WESTERN BORAX CO., Limited.**

No. 8597.

Circuit Court of Appeals, Ninth Circuit.

Oct. 10, 1938.

H. W. Elliott and Fred Aberle, both of Los Angeles, Cal., for appellant.

Chapman & Chapman, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment in favor of the defendant, appellee here, holding the plaintiff, appellant, not entitled to recover on a claimed breach of contract employing appellant as appellee's exclusive United States agent for the sale of the latter's borax products.

The contract contained the following arbitration clause: "In case any dispute shall arise between the parties hereto as to the construction of any provision of this agreement, or as to the fulfillment hereof by either party thereto, such dispute shall be submitted to three disinterested arbitrators, one to be selected by each of the parties to this agreement, and the third by the two arbitrators so chosen, who shall render their decision in writing and serve a copy upon each of the parties hereto, and the same shall be binding upon them and conclusive as to the matter in controversy."

Appellee demurred to the complaint on the ground that the court had no jurisdiction to proceed because inter alia it failed to show the arbitration had been waived. Before decision the demurrer was withdrawn and the failure to arbitrate prior to suit was waived by the stipulation for a reference to agreed arbitrators appointed by the court as its referees.

The district court has jurisdiction to litigate a contract, despite such an arbitration clause. The remedy of the party claiming it as a condition precedent to recovery is a stay of proceedings until it has been had or a default in pursuing the arbitration is shown. 9 U.S.C.A. § 3; Shanferoke Coal etc., Co. v. Westchester Service Corp., 2 Cir., 70 F.2d 297; Id., 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583.

The California cases recognize that the arbitration may be waived and the contract litigated in its courts. Landreth v. South Coast Rock Co., 136 Cal.App. 457, 461, 462, 29 P.2d 225, 226, 227; Wilson v. Mattei, 84 Cal.App. 567, 575, 576, 258 P. 453; see Prieucrete Corp. v. U. S. Fid. & Guar. Co., 7 Cal.App.2d 733, 740, 46 P.2d 1000, 1003, 1004; 3 Am.Jur. § 56, p. 887. The California Supreme Court's holdings that arbitration is a condition precedent to litigation are in cases in which there was no waiver, and the objection of a failure to arbitrate was raised by the defendants, by demurrer or plea in abatement. Clogston v. Schiff-Lang Co., Inc., 2 Cal.2d 414, 41 P.2d 555; Davisson v. East Whittier Land etc., Co., 153 Cal. 81, 96 P. 88. Since the Court has jurisdiction to entertain the suit on the contract, the waiver of arbitration may as well come after as before the commencement of litigation.

The parties stipulated for a reference and the court appointed three referees. Hecker v. Fowler, 2 Wall. 123, 17 L.Ed. 759; Shipman v. Straitsville Central Mining Co., 158 U.S. 356, 361, 15 S.Ct. 886, 39 L.Ed. 1015; Philadelphia Casualty Co. v. Fechheimer, 6 Cir., 220 F. 401, 407, Ann. Cas.1917D, 64; Eichberg v. U. S. Shipping Board Corp., 51 App.D.C. 44, 273 F. 886, 890; Longsdorf, Cyc. of Fed.Proced., § 1456, et seq.; Calif.Code Civil Proc., § 638, et seq. Their findings were adopted by the court. The pertinent facts found are hereafter summarized.

Appellee acquired certain large borax deposits, developed mines thereon and plants for refining the mineral, and manufactured from it boron products. These deposits and production facilities were in California. Appellee contemplated entering and acquiring customers consuming its products in a market throughout the United States already occupied by two powerful competing producers and distributors.

Appellant, with an existing agency distributing business, was engaged by appellee as its exclusive agent for the sale in the

United States "of all the borax, crude and/or refined, borac acid and other products produced by the party of the first part". The contract of agency which was to "continue in effect for ten (10) years" from March 11, 1931, did not specify any minimum or other amount appellee was to produce. The provision for commissions is:

"The party of the first part agrees to pay to the party of the second part as compensation for acting as its agent in and about the sale of its products and for guaranteeing accounts as herein mentioned, a commission of 10% on the delivered selling price in carload quantities on the first ten thousand (10,000) tons of 2000 pounds each sold annually and a commission of 5% on any additional quantities sold in carload lots in each calendar year as long as the net return to the producer at his plant amounts to not less than $20.00 per ton for the material sold. If and when the producer's net return falls below twenty ($20) dollars per ton at his plant it is mutually agreed that the commissions on goods netting less than twenty ($20) dollars per ton at the plant will be subject to reconsideration and further mutual agreement."

Appellant acted as such agent for over 2 years and it is not contended that it did not perform its part with due diligence. However, by the end of this time it had become apparent, and was so found, that appellee's industry was conducted at a loss and in all probability would continue to be so. During the competition with the two competitors occupying the field the prices of boron products fell greatly, apparently in part due to the competition and in part to general unfavorable business conditions during the depression. The losses depleted appellee's working capital and there was ground to fear financial difficulties which would lead to a receivership and possible bankruptcy.

In this situation, appellee made a contract for the sale of its mines, deposits and refineries and, in June, 1933, shortly after the national bank moratorium, consummated the transaction and thereafter "produced" no more of the borax or its derivative products.

Appellant contended this sale, preventing appellee's further production, was an anticipatory breach of the contract, entitling it to damages for loss of net profit from its anticipated commissions over a period from and including May, 1933, to and including February, 1941. Appellee denied the liability and this suit followed.

The district court found that while at first a portion of the products was sold for a price in excess of $20 per ton net to appellee at the plant, from early in 1932 the products sold by appellant netted less than that amount and that when the appellee ceased to produce, because of the transfer of its borax deposits and plant, there was no prospect of a higher price. This brought the major part if not all of the business to be procured by appellant under that portion of the contract for which the commission was to be the matter of a new agreement between the parties, that is the portion reading: "If and when the producer's net return falls below twenty ($20) dollars per ton at his plant it is mutually agreed that the commissions on goods netting less than twenty ($20) dollars per ton at the plant will be subject to reconsideration and further mutual agreement."

The district court found, on substantial and competent evidence, that the parties never agreed on the rate of commission on future sales netting less than $20 per ton at the plant.

It is thus apparent that several uncertainties made impossible a rational determination of appellant's loss of profit from the anticipatory breach of the contract, if the transfer of the properties be so regarded. One was the volume of future sales, if any, at above $20 per ton net at the plant on which the commission was fixed. Another was the amount netting less than $20. Another was the commission on the latter sales which in the future might be agreed on by the parties. We agree with the finding and conclusion that appellant had not shown and could not establish what its profit from its future commissions would have been if the appellee had continued to produce.

The question whether the judgment should be for nominal damages with the right to costs need not be entertained in view of our further consideration of the appeal.

We cannot agree with appellant's fundamental contention that there was a breach of the contract by cessation of

production and hence frustration of the agency. The district court found that the contract was first signed in New York by appellant, then sent to California where it was signed by appellee. No error is assigned to the finding. Hence the contract was made in California. Michelin Tire Co. v. Coleman & Bentel Co., 179 Cal. 598, 604, 178 P. 507. The place of execution and the forum chosen are the same and we interpret the contract, so far as concerns the claimed obligation of appellee to continue to produce borax in California for future sales by the appellant in various unascertainable states, according to the law of California. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

The agreement contains no express promise on the part of appellee to produce a definite quantity, or, indeed, to produce any quantity, but provides merely that appellee " * * * hereby appoints [appellant] * * * as its sole and exclusive agent for the sale in the United States of all the borax * * * boric acid and other products *produced* by the [appellee] * * *". (Italics supplied).

Appellant's contention in effect is that appellee not only must retain ownership of the borax properties but that it must continue to "produce" from them to yield a profitable commission to appellant no matter what losses appellee may suffer from the failure of appellant, its exclusive agent, to procure sales yielding a profit to the appellee.

Here is no transfer of the properties merely to trick the appellant out of its commissions. The evidence amply sustains the finding of appellee's good faith. That finding is that continuance of production "would have resulted in further additional losses and involved defendant in additional indebtedness and financial difficulties, nor was there any reasonable prospect of improvement in market conditions at the time defendant sold its properties * * *, and said sale was made by defendant in good faith and because of its honest belief that it would be impossible for it to continue in the business of operating its mining properties and producing its products and marketing the same, either at a profit or without accumulating further losses and indebtedness which ultimately would force a cessation of operations in the production of refined borax or other boron products."

It is against business common sense that the parties would make an agreement to continue production or remain in the business in these circumstances. Cf. Robbins v. Pacific Eastern Corp., 8 Cal.2d 241, 275, 276, 65 P.2d 42. True, such a contract could be drawn, but here is absence of any express agreement to that effect. Neither the contract's terms nor the surrounding facts warrant the implication of such an agreement. On the contrary, they confirm the opposite interpretation.

In the first place is the absence, already mentioned, of any agreement as to the amount to be produced in any portion or over the whole period of the contract.

There was, moreover, as heretofore indicated, no contract between the parties as to what commissions would be paid on sales of goods netting less than $20 per ton at the plant. Certainly the possibility (and, indeed, as proved by subsequent events, the actuality) that goods might net at the plant less than $20 per ton and that the parties might be unable to agree upon what commissions should be paid on such sales, also negatives the implication of an unrestricted promise by the appellee to retain its properties and to continue to produce from them.

The fact that the agreement contained a provision that it would continue in effect for a definite period does not of itself raise an implied promise that the appellee would retain the borax-producing property during the whole of that period irrespective of whatever circumstances might arise. Langenberg v. Guy, 77 Cal.App. 664, 247 P. 621; San Francisco Realty Co. v. Linnard, 98 Cal.App. 33, 276 P. 368, 370. Cf. Pratt-Low Preserving Co. v. Evans, 55 Cal.App. 724, 728, 204 P. 241.

In Langenberg v. Guy, supra, the pertinent instrument provided: "August 6, 1920, Mr. G. O. Langenberg, Los Angeles, Calif.—Dear Sir: In consideration of the purchase of the Indiana truck outfit from our Mr. Knudson, we will employ your truck and driver for lumber hauling for a period of one year from date of delivery of new truck, as our business warrants * * *".

Plaintiff commenced hauling lumber for the defendant on September 25, 1920, and

continued to do so until November 12, 1920. On the last mentioned date, defendant sold his business to a third party and notified plaintiff that, because he did not have any more business, he would have no more hauling for the plaintiff to do. Plaintiff brought suit, claiming that the defendant, by selling his business, voluntarily put it out of his power to perform his part of the contract, thereby preventing performance by the plaintiff, and that such prevention of performance constituted a breach entitling plaintiff to sue for damages immediately. The plaintiff was successful in the lower court, but on appeal the judgment in his favor was reversed and a petition for rehearing was denied. The court, in an able opinion with an extensive consideration of authorities, concluded that the sale of defendant's business did not violate any express or implied term of the contract.

The reasoning of these California cases and of the authorities on which they rely, require us to hold that in this case the Borax Company did not agree to continue to produce from its properties and that there was no breach in their sale. If there were no such California opinion we would agree that its law is in accord with the opinion of the Fifth Circuit in Pfann & Co. v. Turner Cypress Lumber Co., 194 F. 69, 70, certiorari denied 225 U.S. 706, 32 S.Ct. 838, 56 L.Ed. 1266. The contract there provided: "The said party of the first part agrees to sell and the said part (party) of the second part agrees to buy all of the lumber of the grades and kinds," etc., "and also such further lumber as may be manufactured by them" from November 1, 1901, to November 1, 1903. Pfann & Co., the "party of the first part", on or about March 31, 1903, sold the lumber mill and the Lumber Company brought an action to recover damages for failure of Pfann & Co. to deliver lumber for the period of seven months from March 31, 1903, to November 1, 1903. Plaintiff recovered in the lower court, but on appeal the judgment in its favor was reversed— the Circuit Court of Appeals saying:

" * * * The words do not import a promise to keep the mill in operation, nor to manufacture any quantity of lumber during the two years. Lumber manufactured by the mill of the grades in the contract specified, it was the duty of Pfann & Co. to sell and deliver to the Lumber Company at the contract price. But the words referred to cannot, by any reasonable rule of interpretation, be so construed as to divest Pfann & Co. of the right to dispose of their property in their own way and at any time deemed advantageous to themselves.

"To construe the words so as to deprive them of the right to sell the plant, there must be interpolated in the contract language which the parties themselves have failed to employ. In other words, we would thus make a contract for the parties which they have not made for themselves. A right so important as that of one to sell his own property should not be denied him unless the language employed clearly conveys that intention." Pfann & Co. v. Turner Cypress Lumber Co., 5 Cir., 194 F. 69, 71.

The provision that the commission here is based on "all" the borax "produced" by appellee is identical in principle with the provision in the Pfann case for the purchase of "all" the "lumber as may be manufactured by them".

See, also, In re United Cigar Stores Co., D.C., 8 F.Supp. 243, affirmed 2 Cir., 72 F.2d 673, certiorari denied. Consolidated Dairy Products Co. v. Irving Trust Co., 293 U.S. 617, 55 S.Ct. 210, 79 L.Ed. 706.

Appellant cites the case of Macgregor v. Union Life Ins. Co., 8 Cir., 121 F. 493. The rule there invoked is that (page 496) "A contract should always be so construed as to effectuate the intentions of the parties thereto; and, in determining what was their intention, everything within the four corners of the instrument is to be considered, as well as the situation and relations of the parties, and the subject-matter to which the contract relates". As indicated, the situation and relations of the parties here and the subject-matter to which their contract relates, requires the interpretation we have given.

Appellant also contends that an item of $1440 of commissions on orders not accepted by appellee should have been awarded appellant. The contract provision relied on reads: "The [appellant] * * * will use its reasonable efforts to sell the said products of the [appellee] * * * at the best prices obtainable, *subject to the approval of the [appellee]*". (Italics supplied). The appellee agreed to pay commissions only if it approved the prices in

offers obtained by the appellant. It is evident, therefore, that appellant could have no right to commissions on orders tendered to but refused by the appellee.

The judgment is affirmed.