[Civ. No. 5185. Second Appellate District, Division Two.—May 6, 1929.]

JOHN H. ROBSON et al., Respondents, v. CLIFF HAHN et al., Appellants.

Denis & Griffith for Appellants.

Clarence L. Kincaid for Respondents.

THOMPSON (IRA F.), J.—This action was commenced for the purpose of recovering from the defendants the sum

of $1,000 paid to them as their compensation for their services, as real estate brokers, in effecting a sale of property belonging to the plaintiffs upon the allegation that without the knowledge of the plaintiffs or the buyers the defendants collected commissions from both. Judgment was rendered in favor of the plaintiffs and defendants appeal therefrom.

On August 8, 1922, the respondents employed the appellants to sell for them a piece of real property, which for the sake of convenience we may hereafter refer to as lot 8, for the sum of $21,000, agreeing to pay appellants five per cent of the selling price as their commission. On August 12, 1922, at about 8 o'clock in the evening the appellants Hahn and Sheehan called at the home of Frank and Mary Caldwell for the purpose of inducing the Caldwells to buy the property. The appellants took Mrs. Caldwell to the property during the evening, and although she did not inspect the inside of the place she informed them she liked it and would take it, but that she would not sign up in the absence of her husband, Frank Caldwell. About noon of the day following the appellants called on the respondents and informed them that lot 8 could not be sold for $21,000 and induced respondents to sign another and different listing in which respondents agreed to sell for $19,000 net to them and allow the appellants as their commission any sum received in excess of the net selling price. A couple of hours later in this same day appellants again called on Mr. and Mrs. Caldwell, and informed them as they had Mrs. Caldwell on the evening previous that they had the property for sale at a net selling price to the sellers of $20,000 and the Caldwells would be required to pay to appellants for representing them as purchasers an additional $1,000 as commission. The Caldwells accepted the offer thus made and agreed to buy the property for the total sum of $21,000. The sale was handled in an escrow, and neither the sellers, the respondents, nor Mr. and Mrs. Caldwell, the purchasers, knew of the payment of a commission by the other until after the escrow was completed, and the escrow statement forwarded, although, as already indicated, the respondents knew that appellants were to receive as commission all sums in excess of the net selling value of $19,000. Mrs. Caldwell owned a piece of property on Crocker Street which she required the appellants to sell for the sum of

$23,000, and for which sale she only paid to them as commission $333.35. This property had to be sold in order that the Caldwells might have the funds with which to purchase lot 8. The escrow instructions signed by respondent John Robson did not disclose the purchase price of $21,000.

■ It is apparent from the facts which we have recited that proof was made of the representations found to have been stated to the respondents and to the Caldwells by oral testimony. Objection was lodged to all such testimony by the appellants on the ground that it was incompetent and outside the issues for the reason that the complaint did not charge that appellants had fraudulently or by mistake, trick or device, secured the respondents to sign the second listing. The same objection was raised by demurrer. The objections to the oral testimony, like the demurrer to the complaint, were overruled. It may be fairly said that the entire appeal rests upon a settlement of this one problem.

There would seem at first blush to be much merit in this contention of the appellants, but a close analysis of the situation compels us to a different conclusion. The appellants were employed in a supposed confidential, advisory capacity for the respondents, who relied upon them for their advice and assistance. The betrayal of that confidence constitutes a fraud. (*Brison* v. *Brison,* 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689]; *Hageman* v. *Colombet,* 52 Cal. App. 350 [198 Pac. 842].) Or, as is said in *Rauer's Law etc. Co.* v. *Bradbury,* 3 Cal. App. 256 [84 Pac. 1007]: "Whenever he (the agent) has an interest in making the sale which is antagonistic to that of his principal, he is unable to discharge his full duty to the latter, and by continuing to act as his agent, without disclosing to him the fact of such interest, he commits a fraud upon him which will deprive him of all right to compensation for his services" (citing a list of authorities). The case from which we have just quoted was in many respects similar to the instant cause. The agent there required the purchasers to pay a commission, which fact he concealed from the seller. ■ When, therefore, the complaint in the present case alleged that the appellants had charged and received commissions from the purchasers as well as the sellers who employed them, it did in fact allege that they were guilty of a fraudulent act, and the

door was thrown open to determine whether they had in fact been endeavoring to serve two masters. One of the earliest authoritative pronouncements, and one which illustrates the fraudulent nature of the act alleged is found in the gospel of Matthew (chap. vi:24), as follows: "No man can serve two masters; for either he will hate the one and love the other; or else he will hold to the one and despise the other. Ye cannot serve God and mammon." The act alleged is said to be "against sound public policy and good morals" (*Glenn* v. *Rice,* 174 Cal. 269 [162 Pac. 1020]). This case also says: "His contract for compensation being thus tainted the law will not permit him to enforce it against either party. It is no answer to this objection to say that he did, in the particular case, act fairly and honorably to both. The infirmity of his contract does not arise from his actual conduct in the given case, but from the policy of the law, which will not allow a man to gain anything from a relation so conducive to bad faith and double dealing." The irresistible conclusion, therefore, is that the allegation of double dealing is an allegation of fraudulent conduct sufficient to warrant the court in rending the veil of legality with which the transaction was cloaked by the admission of oral testimony, for the purpose of discovering the true conduct of the parties. Or, as is said in *Hageman* v. *Colombet, supra:* "In case of fraud no mere form of words of which the parties have made use can shut out inquiry as to the real facts." And this is true regardless of the fact that other fraudulent acts, not alleged, may have been made use of for the purpose of securing a written contract presenting the surface of lawfulness.

█ It is suggested that the second listing of the property by the respondents does not constitute an agreement to pay commission, but we find the authorities to have settled the question to the contrary (*Sill* v. *Ceschi,* 167 Cal. 698 [140 Pac. 949]; 9 C. J. 581).

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 4, 1929, and a petition

by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 3, 1929.

All the Justices present concurred.